## 59080. THRIFT-MART, INC. et al. v. COMMERCIAL UNION ASSURANCE COMPANIES et al.

Sognier, Judge.

Appellants, the operator of a grocery store business and the owner of the building in which the business is conducted, filed individual suits against Wayne Allan Moore and the administrator of the estate of Dennis C. Williams seeking damages for destruction of their property by fire. Appellee, Commercial Union Assurance Companies, then brought a declaratory judgment action to determine whether coverage of Wayne Allan Moore was afforded under a homeowners insurance policy issued to his father, denying liability because of an exclusion in the policy providing that "This policy does not apply . . . to bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

The jury rendered a verdict in favor of the insurer and judgment was entered accordingly. The appellants' motions for judgment notwithstanding the verdict and for new trial were denied and this appeal ensued. We affirm.

1. Appellants' contention that the evidence was insufficient as a matter of law to support a verdict in favor of the insurer is not supported by the transcript of testimony at the trial and other statements of Wayne Allan Moore introduced therein. Moore testified that on Saturday, January 11, 1976 he and a friend and schoolmate, Dennis Williams, had been drinking vodka all day. Moore was fourteen. Late that night he and Williams went to a youth recreation center to get some Coca-Colas but were asked to leave because they had been drinking. Both left and Williams went to a nearby grocery store, operated by the appellant Thrift-Mart. Moore followed and saw Williams stealing Cokes from the soft drink machine. Williams broke into the store and Moore followed him in by entering through a broken window, climbing over a cabinet and going through two or three doors to get into the store area. Moore knew he was not authorized to enter the building but wanted to get Williams out before they were caught. While in the store he knocked a jar of mayonnaise off a shelf breaking the jar. When he cut his bare foot on the glass he threw a bottle of catsup in anger. He took some money Williams gave him out of the store and then returned to get Williams out. It "seemed like" there were articles knocked off the shelves and stacked up. He saw smoke and "took off," thinking Williams was behind him. However, Williams was trapped inside the store by the rapidly combusting fire and perished from injuries received when the store was destroyed by flames.

Moore also made statements prior to trial to the insurance claim adjuster, a fire marshall and the sheriff, which differed in some respects from his trial testimony and which were introduced for purposes of impeachment. Moore told appellee's adjuster that he broke down the door to the store to enter it; Moore told the sheriff that Williams told him (Moore) to run down the first aisle and wreck it and that he ran down the aisle knocking off merchandise. He told the fire inspector that Williams was spraying an aerosol can of Right Guard over a butane cigarette lighter flame as a blow torch, although at trial Moore denied seeing such an occurrence. When questioned about discrepancies between prior statements and his trial testimony, Moore swore that he had lied during previous statements to protect himself because he was facing criminal charges, but he was telling the truth at trial. In addition to the money which Moore admitted taking from the store, investigators

also found other articles including a bracelet, cigarettes and butane cigarette lighters outside the burned store. After being qualified as an expert, the investigator from the State Fire Marshall's Office testified that based upon his examination of the scene of the fire, his consultation with witnesses and his expertise, it was his opinion that the fire was intentionally set because of the relation of "hot spots" and the rapid movement of the fire.

The jury was entitled to believe all, part or none of Moore's testimony, and the evidence as a whole amply supported a finding that Moore intended or expected damage to occur to the items he swept off the shelf. Even if Moore did not intend or expect to *burn* the property, the policy exclusion does not restrict the injury or damage to fire so as to preclude the verdict as a matter of law. " 'Accident' and 'intention' are converse terms. An accident refers to an *unexpected* happening rather than one occurring through intention or design." (Emphasis supplied.) *Travelers Indemnity Co. v. Hood,* 110 Ga. App. 855, 857 (1) (140 SE2d 68) (1964) (20 ALR3d 314 (1968)). Thus, Moore's acts could not be unexpected unless they were accidental, and there was no evidence that such was the case. Hence, if the jury found that Moore intended to cause harm to the property of another, the resulting damage was both intentional and expected, as contemplated by the exclusion of coverage. Accord, State Farm Fire & Cas. Co. v. Muth, 207 NW2d 364 (Neb. 1973) with identical policy provision. See generally Annot., 2 ALR3d 1238, 1243, § 4 (1965).

2. Nor do we agree that the policy exclusion referred only to the named insured, Robert H. Moore, the father of Wayne Allan Moore, and to no other insured under the policy. "Insured" is defined in the policy as "residents of the Named Insured's household, his spouse, the relatives of either, and other person under the age of twenty-one in the case of any Insured . . ." [T-210] "The language ' *an* insured' makes the company liable for property damage caused by any person included in the omnibus clause, while the language 'the insured,' referring to settlement of claims, is ambiguous, since it may mean either the named insured or the insured actually causing the damage." *Assurance Co. of America v. Bell,* 108 Ga. App. 766, 770 (2) (134 SE2d 540) (1963). Appellants argue that "the insured," as it appears on the first page of the policy where the agreement to insure is set forth, includes Wayne Allan Moore as a resident of the household of the named insured under the age of twenty-one, but the same language, when used in the exclusion from coverage, applies only to the *named* insured, his father. This construction "is worthy of mention solely on account of its novelty. As a legal argument, it is wholly without merit."

*Hughes v. Powell,* 152 Ga. App. 851 (264 SE2d 303) (1980). It follows that the court was correct in refusing to charge that "the Insured" in the exclusion clause referred only to the named insured.

3. There was likewise no error in failing to grant appellants' motions for directed verdict, j.n.o.v. or new trial on the ground that due to his intoxication Moore was incapable of the requisite intent or expectation so as to exclude a harm resulting from his acts from insurance coverage. This issue was submitted to the jury and decided adversely to the appellant. The evidence was sufficient to authorize the jury's conclusion.

4. The trial court's charge to the jury concerning conspiracy, which is enumerated as error, was almost a verbatim quote from *Hill v. Reynolds,* 19 Ga. App. 334 (1) (91 SE 434) (1916), where it was stated: "Where a conspiracy is shown, the act of one becomes the act of all, in so far as the furtherance of the conspiracy is concerned; and each is as fully responsible for the acts of the others in carrying out the common purpose as if he himself had committed the acts. [Cits.]" The *Hill* case goes on to say that "[T]his rule of law applies with no less force to an action for the resulting tort than to a prosecution for the resulting crime, and applies alike in all cases, whether the alleged tort amounts to a crime or not. [Cits.]" *Hill v. Reynolds,* 19 Ga. App. 334 (1(a)), supra. We do not agree that this charge was inapplicable because the insurer sought a declaratory judgment based on the contract of insurance. The appellants' complaints alleged negligence and gross negligence on the part of both defendants and the evidence authorized the jury to infer that a conspiracy existed between Moore and Williams to commit the acts which resulted in the destruction of appellants' property. The legal principle charged by the court was a correct statement of the law and the facts, and the evidence warranted such an instruction.

5. The assertion that the inspector from the State Fire Marshall's Office was erroneously permitted to give his opinion as to how the fire started because he was not properly qualified as an expert and no foundation was laid to support his conclusion is not supported by the transcript or by legal authority. This witness had professional training, had been employed by the State Fire Marshall's Office since 1963 and had conducted investigations of some two thousand fires during his employment. Further, he testified in detail as to the basis for his opinion before responding to the question as to the fire's cause, to which appellants object. "[A]n expert may give his opinion without stating the foundation therefor and without a hypothetical question based upon other evidence . . . where the expert's opinion is based upon 'facts which he knows and has observed' [Cit.] . . . 'or based upon facts in the record at the time

he states his opinion, or based partly on firsthand knowledge and partly on the facts of record.'" *Redwing Carriers, Inc. v. Knight,* 143 Ga. App. 668, 672 (6) (239 SE2d 686) (1977). Thus, this testimony was properly admitted.

6. The court properly refused to give appellants' requested charge that when a person receives an injury the presumption is that it was accidental rather than the result of design, since there was no evidence that the destruction of the property was accidental rather than intended or expected.

7. The trial court did not err in charging the jury that a person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, though the presumption may be rebutted, and that the acts of a person of sound mind and discretion are presumed to be the product of his will although this presumption may also be rebutted. Appellants argue that because the evidence showed Moore and Williams to be extremely intoxicated at the time of the fire they were without the requisite intent. We discussed this issue in Division 3 and reiterate that the question of intent was for the jury. The charge as given was a correct statement of the law and the issue was decided contrary to the appellants' position. Code Ann. §§ 26-603, 26-604. Accordingly, we find no grounds for reversal.

*Judgment affirmed. Deen, C. J., and Birdsong, J., concur.*

Argued January 10, 1980 — Decided April 15, 1980 —

*David A. Handley, Jack O. Morse, Charles L. Barrett, III,* for appellants.

*Thomas E. Greer, David H. Tisinger, J. Thomas Vance, Jack F. Witcher, Richard C. Sutton,* for appellees.