### 61857. TRANSAMERICA INSURANCE COMPANY v. THRIFT-MART, INC. et al.

CARLEY, Judge.

On January 11, 1976, the Thrift-Mart grocery store was destroyed by fire. Subsequently appellee-Thrift-Mart and appellee-Lamar Cook filed separate civil actions against Wayne Allen Moore and the administratrix of the estate of Dennis C. Williams seeking to recover damages for the destruction of the property. Commercial Union Assurance Companies, insurer of Moore's father, brought a declaratory judgment action to determine whether coverage was afforded to Moore under an exclusion of the policy providing that "This policy does not apply . . . to bodily injury or property damage which is either expected or intended from the standpoint of the Insured." It was Commercial Union's contention that the fire was the "expected or intended" result of the acts of Moore and that, therefore, it was required to afford Moore neither coverage nor a defense to the pending tort action. In that declaratory judgment action the jury rendered a verdict in favor of Commercial Union and against Moore. The judgment entered on that verdict was affirmed on appeal. *Thrift-Mart v. Commercial Union Assurance Companies,* 154 Ga. App. 344 (268 SE2d 397) (1980).

Transamerica Insurance Company, the appellant in the instant case, is the insurer of Williams' father. Transamerica's policy contains the following provision: "EXCLUSIONS. This policy does not apply to personal injury or property damage which is either expected or intended from the standpoint of the Insured." Subsequent to this court's affirmance in *Thrift-Mart,* supra, of the judgment entered on the verdict finding Moore was not afforded liability coverage under the policy from Commercial Union, Transamerica filed the instant declaratory judgment action alleging that the destruction by fire of the premises was likewise the result of its insured's "expected or intentional" acts. Accordingly, Transamerica sought a declaration that it was "in no way obligated to afford liability insurance coverage or a defense to [appellee] Mary

Ann Weatherby, as Administratrix of the estate of Dennis C. Williams, Jr. . . ." in appellees' pending suits. The case was submitted to the jury and, unlike the result in *Thrift-Mart,* supra, a verdict in favor of the insured and against Transamerica was returned. Judgment was entered on this verdict and Transamerica's subsequent motions for new trial and judgment n.o.v. were denied. Transamerica appeals.

1. Transamerica asserts that it is entitled to invoke the doctrine of res judicata and claim the benefit of the judgment affirmed in *Thrift-Mart,* 154 Ga. App. 344, supra. Essentially Transamerica urges that it is entitled to a declaration that Williams, its insured, is afforded no coverage and no defense to the pending action because Commercial Union initially sought and obtained such a declaration with regard to Moore, its insured.

"Read together and affirmatively, Code §§ 110-501 and 110-503 provide that a judgment on the merits of a court of competent jurisdiction shall be conclusive between the *same parties and their privies* as to *all matters put in issue, or which* under the rules of law *might have been put in issue,* in the cause wherein the judgment was rendered, until such judgment shall be reversed or set aside." *Gilmer v. Porterfield,* 233 Ga. 671, 674 (2) (212 SE2d 842) (1975). Commercial Union was the plaintiff in the prior declaratory judgment action and the sole issue which was or could have been litigated in that action was whether Commercial Union's insured, Moore, was afforded coverage and a defense in the pending suit. *Southern Trust Ins. Co. v. Eason,* 134 Ga. App. 827 (216 SE2d 667) (1975). In contrast, Transamerica was the plaintiff in the instant declaratory judgment proceeding and the sole issue which was or could have been litigated was whether Transamerica's insured, Williams, was afforded coverage under its policy and his administratrix entitled to a defense by the insurer in the pending suit. Under these facts there is no "privity" between Transamerica in the instant suit and Commercial Union in the former and, there being no identity of parties plaintiff, Transamerica cannot claim that Commercial Union's judgment is res judicata on the issue of Transamerica's liability under its own policy to its own insured. See *Walka Mtn. Camp v. Hartford Acc. & Indem. Co.,* 222 Ga. 249 (149 SE2d 365) (1966). Nor, on these facts, is there any reason why Williams' administratrix, who was in essence a "stranger" to the prior declaratory judgment action, should be estopped by the judgment in that case to assert against Williams' own insurer and under his own policy the right to coverage and a defense in the pending tort action. See *Montgomery v. DeKalb Steel,* 144 Ga. App. 191, 193 (3) (240 SE2d 741) (1977). Transamerica's reliance on the doctrine of res

judicata or estoppel by judgment is without merit.

2. In 1979 the deposition of Wayne Allen Moore, Commercial Union's insured, was taken in connection with Thrift-Mart's and Cook's pending tort actions and Commercial Union's then pending declaratory judgment action. Moore testified in the declaratory judgment action but died subsequent to the judgment in that case, affirmed in *Thrift-Mart,* supra. Moore's death occurred, however, prior to the institution of the instant declaratory judgment proceeding by Transamerica seeking a similar declaration against Williams, its insured. During the trial of the instant case, over Transamerica's objection, the court permitted appellees to use Moore's deposition which had been taken in connection with Commercial Union's declaratory judgment action. As was the case with Moore's testimony during the trial of Commercial Union's declaratory judgment action, the account of the events leading up to the fire as reflected in Moore's deposition differed significantly from the more incriminating version of those events he had made earlier to certain third persons shortly after the incident. As Commercial Union had done in *Thrift-Mart,* supra, Transamerica in the instant case introduced Moore's earlier version of how the fire began through the testimony of those third persons to whom Moore had made the incriminating statements. But whereas Commercial Union had relied upon Moore's earlier version of the events to impeach his trial testimony, Transamerica in the instant case relied upon Moore's earlier account to prove its prima facie entitlement to declaratory judgment. And, whereas the appellants in *Thrift-Mart,* supra, had relied upon Moore's trial testimony to defend against Commercial Union's declaratory judgment action, appellees in the instant case relied upon Moore's deposition testimony for the same purpose against Transamerica.

"The testimony of a witness, since deceased, . . ., given under oath on a former trial, upon substantially the same issue and between substantially the same parties, may be proved by anyone who heard it, and who professes to remember the substance of the entire testimony as to the particular matter about which he testifies." Code Ann. § 38-314. This statute requires as the prerequisite to the admission in a subsequent action of the prior testimony of a since deceased witness that the parties and issues in the two actions be substantially the same. *Atlanta & W. P. R. Co. v. Venable,* 67 Ga. 697 (1881). Applying this rule in the instant case demonstrates that even assuming that the issue in the prior actions in which Moore's deposition was taken (whether Moore's actions on the night of the fire were "expected or intended") was substantially the same as the issue in the instant action (whether Williams' actions that night were

"expected or intended"), it is clear that the *parties* in the two actions were not "substantially the same" within the contemplation of Code Ann. § 38-314. "[T]he purpose for requiring that the former testimony had been received in a proceeding having substantially the same issues and parties is to insure that the party against whom the testimony is now offered had an opportunity adequately to cross examine the witness at the previous proceeding. Hence, the parties and the issues both can properly be viewed as substantially the same wherever the party against whom the former testimony is now offered had the opportunity, at the former trial, to cross examine the witness fully as to the matter in issue at the second trial. [Cit.]" *Prater v. State,* 148 Ga. App. 831, 836 (253 SE2d 223) (1979). We believe that *Prater* states the outside limits of the concept of "substantially the same parties" as that phrase is used in Code Ann. § 38-314 and that the statute requires at the minimum that "the party against whom the former testimony is offered is the same . . . '[I]t is only the party *against* whom the former testimony is now offered, whose presence as a party in the previous suit is significant . . .' [Cit.] . . . 'The sole question is whether [the party against whom the former testimony is now offered] had an adequate opportunity by cross-examination to sift this testimony . . .' [Cit.]" *Prater,* 148 Ga. App. at 836-837, supra. Transamerica was not a "party" to the prior actions in which Moore's deposition was taken. It follows that Transamerica was not afforded an opportunity to cross-examine Moore's deposition testimony and it was error to admit it into evidence in the instant case over Transamerica's objection.

Nor do we believe that Moore's deposition was admissible under Code Ann. § 81A-132 (a). It is true that interpretation by some federal courts of the analogous Rule 32 of the Federal Rules of Civil Procedure has resulted in the use against a party in a subsequent action of depositions taken in prior actions in which he was not a party. The rationale of these cases is apparently that "the presence of an adversary with the same motive to cross-examine the deponent, coupled with a substantial identity of issues, in the prior action may suffice to permit the usage of a prior deposition in a subsequent action. [Cits.]" George R. Whitten, Jr., Inc. v. State University Const. Fund, 359 FSupp. 1037, 1039 (D. Mass. 1973). We decline to adopt this theory of "representative cross-examination" implicit in the federal interpretation of Rule 32. In the first instance, the scope of permissible cross-examination is more extensive under the law of this state than it is in federal practice. And, adopting the federal theory of "representative cross-examination" could have the anomolous result under Code Ann. § 81A-132 (a) of permitting the introduction of deposition testimony taken in a prior action into evidence in a

subsequent trial even though the *trial* testimony given in the same former action by the deponent would not be admissible under Code Ann. § 38-314 in the subsequent action. This anomoly would result when the party against whom the trial testimony is subsequently offered was not a "party" to the former action with the right to cross-examine the witness. There must be a uniform general rule for the admission into evidence in a subsequent trial of evidence adduced in a previous case whether by a deponent or by a witness at trial. Either *both* Code Ann. § 38-314 and Code Ann. § 81A-132 should include the theory of "representative cross-examination" or both statutes should not. As we have demonstrated, the outside limits of Code Ann. § 38-314 are crossed when the party against whom the testimony is subsequently offered was not a party to the previous action in which it was given. We decline to relax this rule with reference to Code Ann. § 81A-132. Specific and limited provision for the admission into evidence in a subsequent trial of depositions taken in a prior action is made by Code Ann. § 81A-132 (a) (5). We believe that all other issues relating to the admission into evidence in a subsequent trial of testimony taken in connection with a prior action must be resolved under Code Ann. § 38-314. As discussed above, the requirements of Code Ann. § 38-314 were not met in the instant case with reference to Moore's deposition taken in the prior action in which Transamerica was not a party.

However, even though Moore's deposition did not come within the hearsay exception of Code Ann. § 38-314, we cannot say that it was error to permit its use by appellees under the unique facts of the instant case. As noted, because Moore, who was the only eyewitness to the events leading up to the fire, testified at the prior trial, Commercial Union introduced Moore's earlier incriminating account of those events for impeachment purposes only. However, because Moore had died before the institution of the instant action, Transamerica was able to introduce Moore's earlier incriminating account into evidence as original evidence coming within the hearsay exception of Code Ann. § 38-309. Also because of Moore's death before the institution of the instant action appellees were apparently left without any witness prepared to give evidence in opposition to Transamerica's petition for declaratory judgment and in support of their contention that the damage to the property was not "expected or intended." Under these circumstances it would be manifestly unfair for Transamerica to gain the benefit of Code Ann. § 38-309 by virtue of Moore's death while, by virtue of the same circumstances, appellees were left totally bereft of evidence in support of their position with regard to the incident. Indeed, the law has made a provision for the admission of hearsay testimony on the grounds of

"necessity" which we believe would be applicable in the unique circumstances here existing. "[T]he declarations of a decedent, . . ., to whomsoever made are admissible in evidence if there are no other witnesses to the alleged occurrence." *Moore v. Atlanta Transit System,* 105 Ga. App. 70, 82 (123 SE2d 693) (1961). " '[T]he declarations of a *decedent* to others are admissible if there are no other witnesses to the alleged occurrence, it being for the jury, under appropriate instructions, to determine their weight and credibility. [Cit.]' [Cit.]" *Jaakkola v. Doren,* 244 Ga. 530, 531 (261 SE2d 701) (1979). It is clear that Moore was the only eyewitness to the events leading up to the fire. One version of those events was introduced into evidence in the instant case by Transamerica under Code Ann. § 38-309 because Moore was deceased at the time of trial. Since under the circumstances "the declarations of a decedent are the only method of proof available," we know of no reason why, by reason of the "necessity" occasioned by Moore's death, appellees in the instant case should not be allowed to introduce Moore's other version of the circumstances leading up to the fire if that version is otherwise "trustworthy." *Irby v. Brooks,* 246 Ga. 794 (273 SE2d 183) (1980). Here, Moore's deposition testimony was given under oath and he was subject to cross-examination concerning his actions on the night in question. See *Irby,* 246 Ga. at 795, supra. We therefore believe that because the deceased Moore was the only eyewitness to the events leading up to the fire, his out-of-court declarations in the form of his "trustworthy" deposition testimony were admissible as coming within the rule of necessity as enunciated by the Supreme Court in *Irby,* supra.

Having so held, we further find no error in the denial of Transamerica's motion for judgment n.o.v. The evidence concerning the events preceding the fire was in conflict and here, as in *Thrift-Mart,* 154 Ga. App. 344, supra, the jury was entitled to make the determination as to what the true circumstances were. Here, unlike *Thrift-Mart,* however, the jury resolved the issue in favor of the insured. The conflicting evidence clearly would have authorized a verdict in favor of Transamerica but we cannot say that such a verdict was demanded. See *Wabash Life Ins. Co. v. Jones,* 147 Ga. App. 254 (1) (248 SE2d 536) (1978). Accordingly, we find no error in the denial of Transamerica's motion for judgment n.o.v.

3. Urging that the trial court's charge in effect directed a verdict against it, Transamerica enumerates as error the following instruction: "I charge you that this suit involves the construction and interpretation of a particular clause within an insurance policy issued by the Plaintiff, Transamerica . . ., to the Defendant's, Dennis C. Williams, Jr.'s father . . . I charge you that under Georgia law, an

insurance policy is always construed in favor of the insured. I further charge you that an insurance policy is to be construed most strongly against the insurance company and in favor of the insured. Policies of insurance are to be interpreted in favor of coverage. Policies of insurance are to be liberally construed in favor of the object to be obtained, and in favor of the party insured. Insurance contracts should be construed, if possible, so as to avoid an exclusion. Exclusions from coverage are to be construed against the insurance company, and the insurance company has the burden of demonstrating that a particular fact situation, such as alleged in this case, comes within the particular exclusion. Exclusions from coverage are to be construed against the insurance company, and in favor of the insured, so as to cover the loss sustained. If any doubt should exist in regard to the construction of an insurance policy, the doubt should be resolved in favor of the insured. In this case, the policy should be liberally construed in favor of the validity of the contract of insurance, and against the insurance company that wrote the policy, that it presumed to know all the benefits which it had waived or excluded. In case of any doubt regarding the construction of an insurance policy, the insurance policy should be construed against the insurance company. If an insurance policy is fairly susceptible to more than one construction, the interpretation most favorable to the insured, and in favor of the loss would be given."

Even assuming that this highly repetitive and argumentative charge was an otherwise correct statement of the applicable law of this state, it was error in the instant case to give *any* instruction on the legal principles dealing with construction of a contract. " 'The construction of a contract is a question of law for the court. Where any matter of fact is involved (as the proper reading of an obscurely written word), the jury should find the fact.' [Cit.] Contracts, even when ambiguous, are to be construed by the court and no jury question is presented unless after application of applicable rules of construction an ambiguity remains. [Cits.] Insurance policies being contracts, the decisions have held that the matter of construction is for the court. [Cits.]" *American Cas. Co. v. Crain-Daly Volkswagen,* 129 Ga. App. 576, 579 (200 SE2d 281) (1973). "The rules of law set forth in the Code with respect to the construction of contracts are framed for the guidance and direction of the courts. Except in cases where the meaning of obscurely written words is involved, and where there is evidence tending to show that the meaning of such words was differently understood in one way or another by the parties to the contract, it is . . . improper for the court to give the jury any instruction with regard to the manner in which the contract should be construed. [Cits.]" *California Ins. Co. v. Blumburg,* 101 Ga. App. 587,

591 (115 SE2d 266) (1960). "[I]t is not the province of the jury to construe unambiguous contracts. In fact it is error to submit such question to the jury. [Cit.] The duty to construe contracts is upon the court. [Cits.]" *American Cas. Co. v. Crain-Daly Volkswagen,* 129 Ga. App. 576, 579, supra.

The only issue in the instant case was whether the property damage was "either expected or intended from the standpoint of the Insured" within the plain and unambiguous language of the policy. *Ga. Farm &c. Ins. Co. v. Ray,* 148 Ga. App. 85 (251 SE2d 34) (1978). In other words, the only issue in the case was whether the actions of the insured did or did not fall within the clear and unambiguous terms of the policy exclusion. There was no issue in the case concerning the meaning of the exclusion itself. Thus, "[b]ecause there [was] no issue in the case sub judice as to the meaning of obscurely written or ambiguous words in the policy, the court's charge was erroneous." *Interstate Life & Acc. Ins. Co. v. Brown,* 141 Ga. App. 195, 196 (233 SE2d 44) (1977).

However, we are unable to agree with Transamerica's further contention that it was reversible error to refuse to charge one of its requests which, in effect, would have instructed the jury that they were *not* authorized to construe the language of the policy's exclusion. As discussed, construction of the policy by the jury was not an issue in the case and the jury was otherwise instructed as to Transamerica's contentions with regard to the sole factual issue presented which was whether Williams' acts on the night of the fire were intentional and thus came within the exclusion. We know of no reason why it would be error to fail to instruct the jury that a certain issue of law will not be involved in their deliberations when they are otherwise fully instructed as to the issue of fact which they *must* resolve. While it probably would not have been error to give Transamerica's request in this regard we cannot say that it was under the facts of the case reversible error to fail to give it.

4. Transamerica's request of the following jury charge was refused: ". . . I charge you that voluntary intoxication is not an excuse for any criminal act or omission. A person who voluntarily allows himself to become intoxicated stands legally responsible for his actions to the same extent as a sober person. In other words, the person is to be judged as if the conduct occurred while he was in possession of his normal capacity. An intoxicated person must judge and act with the same skill and caution as if he were sober." Instead, the trial court gave the following instruction: "I charge you that in your determination as to whether or not a person intended or expected any act or injury, you may consider his ability or lack of ability to form any intent, due to his drinking of alcoholic beverages

or intoxication at the time of the incident."

Assuming without deciding that the instruction which was given in the instant case is an accurate statement of the law (see *Blankenship v. State,* 247 Ga. 590 (277 SE2d 505) (1981)), it is clear that the evidence did not authorize *any* charge on the negation of intent through voluntary intoxication. See *Gaynor v. Travelers Ins. Co.,* 12 Ga. App. 601, 607 (77 SE 1072) (1913). There was no evidence that Williams was, by reason of voluntary intoxication, so drunk on the night of the fire as to render whatever acts he may have committed that night "unintentional." "[I]f the intention to commit the act in controversy is present, intoxication is no excuse . . ." *Hardy v. State,* 242 Ga. 702, 706 (251 SE2d 289) (1978). Thus unless the actor was so intoxicated as to be unable to know, understand and intend to do the act, it cannot be said that his act was not intentional. See *Marshall v. State,* 59 Ga. 154 (1877); *Knight v. State,* 12 Ga. App. 111, 112 (3) (76 SE 1047) (1913). There being no evidence in the instant case that Williams was so drunk on the night of the fire as to be unable to know, understand and intend to do whatever acts he may have committed, the jury should not have been instructed that they were authorized to consider his voluntary intoxication in determining whether he "intended or expected any act or injury." Cf. *Gaynor v. Travelers Ins. Co.,* 12 Ga. App. 601, 607, supra. On the contrary, the evidence clearly demonstrated that Williams was capable of committing "intentional" acts on the night in question and the only issue in the case was whether one of those acts was the deliberate destruction of the property. "[I]f the jury found that [Williams] intended to cause harm to the property of another, the resulting damage was both intentional and expected, as contemplated by the exclusion of coverage." *Thrift-Mart,* 154 Ga. App. 344, 346, supra. If Williams intentionally committed an act of destruction which resulted in the damage to the property Transamerica's coverage therefor was excluded under the policy. If he did not commit such an intentional act, the relevant exclusion did not apply. The charge as given in the instant case would authorize the jury to find that an *act* of deliberate destruction (as opposed to the result thereof) was nonetheless "unintentional" because of Williams' intoxication even though there was no evidence that Williams' intoxication reached a level negating an ability to perform "intentional" acts.

We cannot, however, hold that Transamerica's request to charge was erroneously refused. Transamerica's request was a mixture of both criminal law and contributory negligence principles. See Code Ann. § 26-704; *Barrett v. State,* 129 Ga. App. 72 (199 SE2d 116) (1973); *Shuman v. Mashburn,* 137 Ga. App. 231, 234 (223 SE2d 268) (1976). However, voluntary intoxication as an excuse for a *crime* was

not involved in the instant case. Though unsuccessful for the reasons discussed above, appellees attempted to raise the issue of voluntary intoxication not to excuse a crime but rather to demonstrate that Williams' *acts* were not intentional because he did not have the requisite *capacity* to perform "intentional" acts. See *Jones v. State,* 29 Ga. 594, 606 (2) (1860). See also Autson v. Continental Cas. Co., 107 S. 520 (Miss. 1926). Compare *Shuman v. Mashburn,* 137 Ga. App. 231, 233-234, supra. While the charge on intoxication which was given in the instant case was not authorized by the evidence, Transamerica's request for instruction concerning the same issue was likewise inapplicable. It was, therefore, not error to refuse to give it.

5. Remaining enumerations address the giving or failure to give jury instructions. The transcript reveals that no timely objections to the charge were raised below as required by Code Ann. § 70-207 (a). Accordingly, these enumerations cannot be considered.

6. For the reasons discussed in Division 3, a new trial must be granted.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

DECIDED SEPTEMBER 22, 1981 —
REHEARING DENIED
OCTOBER 9, 1981.

*David F. Root, Dennis J. Webb, Robert C. Semler,* for appellant.

*Jack O. Morse, David A. Handley, Charles L. Barrett III, Jack F. Witcher,* for appellees.