CONGRESS FINANCIAL CORPORATION (SOUTHERN), Plaintiff,

v.

COMMERCIAL TECHNOLOGY, INC., Superior Technology, Inc., and Joseph H. Sitkin, Defendant.

Civil No. 1:93–CV–1522–JEC.

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 22, 1995.

J. Marbury Rainer, David N. Heaton, Parker, Hudson, Rainer & Dobbs, Atlanta, GA, for plaintiff.

Joe B. Abbey, Office of Joe B. Abbey, Dallas, TX, for defendant.

### ORDER

CARNES, District Judge.

This case is presently before the Court on Plaintiff's Motion for Summary Judgment [18] and Defendants' Commercial Technology, Inc. and Superior Technology, Inc. Motion for Summary Judgment [19]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Plaintiff's Motion for Summary Judgment is granted and Defendants' Motion for Summary Judgment is denied.

### BACKGROUND

This case involves a suit for breach of contract, specifically three guarantees. Plaintiff Congress Financial Corporation (Southern), (hereinafter "Congress") entered into a revolving credit facility with American Brass, Inc., an Alabama corporation (hereinafter "ABI"). (Compl. at Ex. A.) On July 19, 1993, to secure its indebtedness, ABI granted Congress a security interest in all or substantially all of ABI's personal property. (*Id.* at Ex. A at Sec. 4.) The agreement was signed for ABI by defendant Joseph H. Sitkin, President. (*Id.* at Ex. A at 5.)

In addition to the ABI collateral, Congress obtained further security prior to making any loans to ABI—the unconditional guaranty of ABI's obligations by defendants Commercial Technology, Inc. (hereinafter "Commercial"), Superior Technology, Inc. (hereinafter "Superior"), and Joseph H. Sitkin. Thus, also on July 19, 1989, Commercial, Superior and Sitkin each executed a "Guarantee and Waiver" with Congress. (Compl. at Ex. B, C and D.) The Commercial and Superior guarantees were executed by S. Mort Zimmerman. Zimmerman executed the Commercial Guarantee as president of Commercial. (*Id.* at Ex. B.) Zimmerman executed the Superior Guarantee as the chairman of Superior's board of directors. (*Id.* at Ex. C.)

Zimmerman was also a director of ABI. (Pl.Mot. for Sum.J. [18] at Ex. 2, Def.Response to Inter. at ¶ 3.) Superior owns 80% of ABI's outstanding stock. (Aff. of McCarthy, at ¶ 2.)[1] Sitkin owns the other 20% of ABI's outstanding stock. (*Id.*) Superior, in turn, is owned entirely by Electric Gas & Technology, Inc., of which Zimmerman is also president. (*Id.* at ¶ 5.)

---

1. The affidavit of George McCarthy, Senior Vice President of Congress, is attached to Plaintiff's Motion for Summary Judgment [18].

Congress made numerous loan advances to ABI. ABI ultimately defaulted under its obligations to Congress. Following ABI's default, representatives of Congress had several discussions with Zimmerman about selling some of Congress' collateral remaining at the ABI plant. (Id. at ¶ 7.) The parties agreed that the sale should be processed through a liquidation assistance firm, ATEC Incorporated. (Aff of McCarthy, at ¶ 9.) Zimmerman, as chairman of ABI's board of director's, agreed to sell the collateral in accordance with the ATEC proposal and added some additional conditions. (Id. at ¶ 9, Ex. F1, F2.) In his affidavit, McCarthy states that, to the best of his knowledge, this sale proceeded in accordance with the additional conditions implemented by Zimmerman, the representative of ABI, Commercial and Superior. Congress ultimately received the net proceeds of the sale as proceeds of Congress' collateral. (Id. at ¶ 9.)

In addition, Zimmerman discussed with Congress a possible sale of certain "ball mill residue" belonging to ABI and included in Congress' collateral. (Id. at ¶¶ 8, 10.) The sale of this property was arranged by Trans Metals, Inc. ("Trans Metals"). (Id. at ¶ 10.) Trans Metals is an affiliate of ABI and Zimmerman. (Id. at ¶ 10, Ex. H1.) Congress has no relationship with Trans Metals. (Aff. of McCarthy, at ¶ 10.)

ABI or Trans Metals then proceeded to sell ball mill residue in the spring of 1993 in one or two transactions. (Id. at ¶ 10.) Trans Metals, then remitted to Congress a portion of the proceeds paid by the buyer. (Id.) These checks were drawn on a Trans Metals bank account. (Id. at Ex. G.)

On or about June 16, 1993, Congress made written demand on Commercial and Superior to honor their respective obligations under the guarantees. (Id. at ¶ 6.) Both Commercial and Superior have refused to pay. (Id.) On July 2, 1993, Congress filed suit against Commercial, Superior and Sitkin and requested judgment for the amount of the indebtedness of ABI (at that time it was in excess of $1,354,232.22), plus interest, costs and expenses, including reasonable attorneys' fees incurred in collecting the indebtedness.[2] Plaintiff and defendant Sitkin moved for entry of a consent judgment. On August 17, 1993, this Court granted their motion and entered a Consent Order Granting the Joint Motion for Entry of Consent Judgment as to defendant Sitkin.

Thus far, Congress has not foreclosed on nor taken possession of the ABI property securing ABI's debt to Congress. (Aff. of McCarthy, at ¶ 12.) On May 25, 1994, plaintiff Congress moved for summary judgment. On June 17, 1994, defendants Commercial and Superior moved for summary judgment.

## DISCUSSION

### I. Summary judgment standard

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. at 2553; *Apcoa, Inc. v. Fidelity Nat'l Bank,* 906 F.2d 610, 611 (11th Cir.1990). However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. After the movant has carried his bur-

2. Additionally, after the commencement of this suit, Trans Metals and/or ABI have made additional sales of ball mill residue. (Aff. of McCarthy, at ¶ 11, Ex. H1–H2.) Congress has had no dealings with the buyer Industrial and Agricul-

tural Chemicals, Inc. (hereinafter "IAC") and otherwise has not negotiated or participated in these transactions. (Id. at ¶ 11.) Congress has also not received any proceeds from the sales to IAC. (Id.)

den, the non-moving party is then required to "go beyond the pleadings" and present competent evidence [3] designating " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553 (quoting FED.R.CIV.P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248, 106 S.Ct. at 2510. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. at 2510–11. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II. Plaintiff's Motion for Summary Judgment

### A. Enforcement of a guaranty is an appropriate case for summary judgment

Congress has moved for summary judgment requesting that this Court enforce the "clear and unambiguous terms of the Commercial Guarantee and the Superior Guarantee." (Pl.Brief in Spt. of Mot. for Sum.J. [18] at 7.) Each instrument provides that "this guarantee and the rights and obligations of Congress and of the undersigned hereunder shall be governed and construed in accordance with the laws of the State of Georgia." (Compl. at Ex. B, C.) In Georgia, the enforcement of unambiguous terms in a written agreement, such as a guaranty, presents an issue of law properly decided by summary judgment. O.C.G.A. § 13-2-1. The Georgia courts have explained that "the process of contract construction ... is composed of three steps." *Travelers Ins. Co. v. Blakey,* 255 Ga. 699, 700, 342 S.E.2d 308 (1986) (citing *Georgia Farm Bureau Mut. Ins. Co. v. Burnett,* 167 Ga.App. 480, 306 S.E.2d 734 (1983); *Colonial Penn Ins. Co. v. Hart,* 162 Ga.App. 333, 291 S.E.2d 410 (1982); and *Transamerica Ins. Co. v. Thrift–Mart, Inc.,* 159 Ga.App. 874, 285 S.E.2d 566 (1981)). The court must first determine whether an ambiguity exists and then attempt to resolve the ambiguity using Georgia's rules of contract construction. *Id.* (quoting *Transamerica,* 159 Ga.App. at 880–81, 285 S.E.2d 566). "Contracts, even when ambiguous, are to be construed by the court and no jury question is presented unless after application of applicable rules of construction an ambiguity remains." *Id.* The third step in the process—jury determination of an ambiguous contract term—is never reached if application of the rules of construction resolves any ambiguity within the contract. *Id.*

In this case, the Court finds that the contract is not ambiguous. Commercial and Superior do not dispute that they executed the guarantees. Each agreement provides as follows:

> the undersigned [Commercial/Superior] ... irrevocably and unconditionally guarantee[s] and agree[s] to be liable for the prompt indefeasible and full payment, performance and observance of all indebtedness, liabilities, obligations and agreements

---

3. The non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

of any kind of [ABI] to Congress, however evidenced, whether as principal, surety, endorser, guarantor or otherwise, whether now existing or hereafter arising, whether direct or indirect, absolute or contingent, joint or several, due or not due, primary or secondary, liquidated or unliquidated, secured or unsecured....

(Compl. at Ex. B, C.) It is undisputed that ABI is in default under its obligations to Congress. The Court finds no ambiguity in the language of the guarantees. Thus, defendants are liable under the express wording of the guarantee agreements unless relieved from liability by an affirmative defense.

### B. Affirmative defenses

In their pleadings, defendants Superior and Commercial have asserted three affirmative defenses: (1) failure of consideration; (2) failure to foreclose; and (3) commercially unreasonable disposition. As the parties asserting the affirmative defenses, defendants also have the burden of proof on these affirmative defenses. *See* O.C.G.A. § 24-4-1 ("The burden of proof generally lies upon the party who is asserting or affirming a fact and to the existence of whose case or defense the proof of such fact is essential."). Thus, in order to survive summary judgment, defendants have the burden of showing the existence of a genuine issue of material fact for each element of their affirmative defenses.

### 1. Failure of consideration

Defendants argue that neither Superior nor Commercial received any consideration for the execution of the guarantee and therefore, the guarantee is not an enforceable contract. This argument is belied by the actual words of the guarantees. The guarantees were executed and delivered "in order to induce [Congress] to extend from time to time, in its sole discretion in each instance, one or more loans, advances or other financial accommodations to, or for the account or benefit of, [ABI]." Each agreement further provides that "this guarantee is a continuing

one and all obligations shall be conclusively presumed to have been created in reliance hereon." It is undisputed that Congress did extend loans to ABI in reliance upon the guarantees.

Additionally, each defendant delivered to Congress its Secretary's Certificate of Directors' Resolutions and Incumbency and Shareholders' Consent for Guarantor (hereinafter referred to as the "Certificate"). (Aff. of McCarthy, at ¶¶ 4-5.) In the Certificate, each defendant certified to Congress that "this Corporation deems it to be to its direct benefit and in its best interests to guarantee all present and future obligations of [ABI] to Congress." In the affidavit of Zimmerman, president of both Commercial and Superior and the person who executed both guarantees on behalf of the defendants, he states that this Certificate executed by Betty Rogers is false. He continues,

Neither Commercial nor Superior ever deemed it to be in its direct benefit and in its best interest to guarantee the obligation of American Brass, Inc. The documents were signed by Betty Rogers at the request of Congress. The statement therein is not only a fiction it is indeed a myth. It is not the business purpose of either Commercial or Superior to pay other people's obligations with their assets. The execution of the documents was an ultra virus [sic] act of Betty Rogers, the Secretary of the Corporations. There is no financial connection between Commercial, Superior and American Brass, Inc.

(Defs.Mot. for Sum.J. [19] at Aff. of Zimmerman, at 2.)

Whether or not Betty Rogers' signing of the Certificate was an ultra vires act or not is irrelevant to the issue of failure of consideration.[4] It is undisputed that Congress loaned money to ABI and that debt remains outstanding. Moreover, it is undisputed that Congress made loans to ABI in reliance on the guaranty obligations of Commercial and Superior. (Aff. of McCarthy, at ¶¶ 3, 6.)

---

4. The Court notes, however, that defendants have admitted that Rogers was the Secretary and a director of Commercial, as well as a director of Superior on July 19, 1989, the date on which the guarantees were executed. (Pl.Mot. for Sum.J. [18] at Ex. 2, Def.Response to Pl.First Set of Interrogs., at ¶¶ 1-2.) Thus, as the Secretary and/or a director, it appears to the Court that Rogers was within the scope of her authority when she executed and delivered the Certificates.

Thus, Congress was induced to make such loans precisely as envisioned by, and as stated in, the guarantees.

■ In Georgia, the monetary consideration underlying a guaranty need not flow directly to the guarantor; rather, the guaranty is valid if the guarantor's principal receives the benefit.[5] *Blalock v. Central Bank of Georgia,* 170 Ga.App. 140, 142, 316 S.E.2d 474 (1984). *See also Doyal v. Thornton,* 205 Ga.App. 74, 76, 421 S.E.2d 314 (1992) (holding that credit to guarantor's principal was consideration for guaranty); *Virgil v. Kapplin,* 187 Ga.App. 206, 208, 369 S.E.2d 808 (1988) (holding extension of credit to company was sufficient consideration to support president's guaranty); *Beard v. McDowell,* 174 Ga.App. 793, 795, 331 S.E.2d 104, 106 (1985) (stating that "consideration for a guarantor's signature is the extension of credit to his principal").

■ In this case, as noted above, it is undisputed that Congress extended credit to ABI in reliance on the guarantees. As a matter of law, the extension of credit to a principal is consideration for a guarantee in Georgia. Therefore, the loans to ABI were consideration for the promise of Superior and Commercial to guarantee the loans. Accordingly, the Court concludes that the affirmative defense of lack of consideration fails as a matter of law.

### 2. Congress' decision not to foreclose

In their responsive pleadings, Commercial and Superior contended that they are discharged from liability because of the decision of Congress not to foreclose on the ABI collateral. Defendants have apparently abandoned this defense. In his affidavit, Zimmerman states "[t]he Guarantors can not [sic] compell [sic] the Creditor to go against the security in light of the written terms of the Guaranty." (Aff. of Zimmerman, at 4.)[6]

The Court notes, however, that such a defense would fail, as a matter of law, because of the express wording of the guarantees even without defendants' apparent abandonment of the defense.

Commercial and Superior agreed in the guarantees that their liability was immediate and unconditional and that Congress need not proceed first against the collateral.

> The undersigned also agrees tha[t] Congress need not attempt to collect any Obligations from [ABI] or others or to realize upon any collateral, but may require the undersigned to make immediate payment of the Obligations to Congress when due or at any time thereafter.

(Compl. at Ex. B at ¶ 2, Ex. C at ¶ 2.) Thus, the Court concludes that even if defendants had not abandoned this affirmative defense, the defense of failure to foreclose on the collateral fails as a matter of law because of the plain language of the guarantee.

### 3. Commercially unreasonable disposition

■ Defendants' final affirmative defense is that of a commercially unreasonable disposition of the collateral. In Georgia, when a secured party sells, leases or otherwise disposes of any or all of the collateral it must do so in a commercially reasonable manner. O.C.G.A. § 11–9–504(3). Georgia follows the rebuttable presumption rule regarding the disposition of the collateral.[7] Under the rebuttable presumption rule, if the creditor has conducted a sale that did not comply with O.C.G.A. § 11–9–504(3), then a presumption arises that the value of the collateral is equal to the value of the debt. *Business Dev. Corp. of Georgia v. Contestabile,* 261 Ga. 886, 887, 413 S.E.2d 447 (1992); *Emmons v. Burkett,* 256 Ga. 855, 858–59, 353 S.E.2d 908 (1987).

---

5. In the law of guaranty and suretyship, the principal is the "person primarily liable, for whose performance of his obligation the guarantor or surety has become bound." BLACK'S LAW DICTIONARY 1193 (6th ed. 1990). In Georgia, there is no distinction between contracts of suretyship and guaranty. O.C.G.A. § 10–7–1.

6. The affidavit of S. Mort Zimmerman is attached to Defendants' Motion for Summary Judgment [19].

7. Thus the authority supplied by defendants, *Federal Deposit Insur. Corp. v. Payne,* 973 F.2d 403, 410 (5th Cir.1992), is not applicable to this case because Texas follows the absolute bar rule, rather than the rebuttable presumption rule.

Plaintiff argues, however, that this Court should not apply this presumption to this case because it has never exercised its fore-closure rights. O.C.G.A. § 11–9–504, the statutory basis of the rule, applies when the secured party "sell[s], lease[s] or otherwise dispose[s] of any or all of the collateral. . . ." O.C.G.A. § 11–9–504(1); *see Business Dev. Corp.*, 261 Ga. at 886, 413 S.E.2d 447 (stating that "when a creditor forecloses on secured property without the statutorily required no-tice to the debtor, or when the creditor con-ducts a commercially unreasonable sale, a rebuttable presumption is created that the value of the collateral is equal to the indebt-edness"); *Enterprise Financial Corp. v. Georgia Nut and Bolt Co.*, 212 Ga.App. 459, 460–61, 441 S.E.2d 908 (1994) (same).

In this case, Congress contends that it has never conducted a foreclosure sale or other disposition of collateral in the first place. In his affidavit, McCarthy expressly stated that Congress never took possession or foreclosed upon the ABI collateral. (Aff. of McCarthy, at ¶ 12.) In the affidavit of Zimmerman, defendants contend that

> Congress has seized and detained the collateral of American Brass, Inc. and sold some without the consent of the Guaran-tors. Whether or not Plaintiff has gone through a formal foreclosure is unknown to the Guarantors. However, there has been a seizure and detention of the assets and a sale of the assets orchestrated by Plaintiff.

(Aff. of Zimmerman, at 4.) The statements in Zimmerman's affidavit regarding sales by Congress are not always consistent, however. Zimmerman alleges that Congress has fore-closed on collateral without notice, but then asserts that Congress has avoided fore-closure on certain assets because of environ-mental concerns. (*Id.* at 3–4.)

Neither the Zimmerman affidavit nor any other matter or pleading presented by defen-dants identifies any specific, probative evi-dence of a sale *by Congress.* All that defen-dants offer are the averments of Zimmerman which are void of any detail or substance. Moreover, the documents attached to the Zimmerman affidavit only confirm the ab-sence of a foreclosure by Congress. Accord-ing to Zimmerman, the documents contained

in Exhibit C to his affidavit demonstrate "Plaintiffs [sic] control of these sales." (*Id.* at 4.) Exhibit C contains two documents. The first of these is a proposal to Skinner Grain and Fertilizer Co. on the letterhead of Trans Metals, ABI's affiliate, for the pur-chase of certain property. Congress is nei-ther a party to, nor is mentioned by, this document. The second document is entitled "Purchase Agreement" and is signed by Rob-ert E. Skinner, presumably on behalf of the purchaser, and by Zimmerman. These docu-ments fail to establish any probative evidence of a sale by Congress. Rather, these docu-ments only evidence a sale by ABI or Trans Metals, to which O.C.G.A. § 11–9–504 does not apply.

The documents attached to the Zimmer-man Affidavit as Exhibit A also confirm the fact that certain post-default sales of ABI property were conducted by Trans Metals. These documents consist of Trans Metals sales reports, invoices, and checks. As Zim-merman himself confirmed in writing as late as January 4, 1994, Trans Metals was ABI's affiliate. (*See* Aff. of McCarthy, at Ex. H.) Congress has no affiliation with Trans Met-als. (Aff. of McCarthy, at ¶ 10.) Thus, any dispositions by Trans Metals cannot be at-tributed to Congress.

Thus, the Court concludes that defendants have offered no specific, probative evidence of any foreclosure or disposition of collateral by Congress. Moreover, the evidence before the Court establishes that any sales that occurred were conducted by ABI or its affili-ate Trans Metals. Accordingly, the Court concludes that defendants' final affirmative defense fails as a matter of law.

### C. Amount of loan balance

Defendants finally argue that summary judgment is not appropriate because the amount of the loan balance is in dispute. In their complaint, plaintiff stated that the amount of the loan balance presently exceed-ed $1,354,232.22 as of that date. (Compl. at 5.) Then during discovery, Congress re-quested defendants to admit that the loan balance, as of October 31, 1993, was approxi-mately $1,376,905. Each defendant replied that it could neither admit nor deny the

request and never identified any reasonable inquiry into available information. (Pl.Mot. for Sum. J. [18] at Ex. 3, Defs.Response to Admissions, at 1.) FED.R.CIV.P. 36(a) requires that,

> [a]n answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny.

FED.R.CIV.P. 36(a). *See Southern Ry. Co. v. Crosby*, 201 F.2d 878, 880 (4th Cir.1953) (stating that "refusal to admit without specific denial or detailed reasons why the respondent cannot truthfully admit or deny, is the equivalent of an admission").

Additionally, defendants did not controvert Congress' Statement of Material Facts Number 7 which stated that the loan balance was $1,449,395 as of April 30, 1994. (*See* Congress' Statement, at ¶ 7; *see also* Aff. of McCarthy, at ¶ 6.) In their Statement of Material Facts in Dispute, defendants stated that "[t]he amount due on the obligations of American Brass, Inc. to Plaintiff is disputed." (Defs.Statement of Material Facts in Dispute [19] at ¶ H.) Local Rule 220–5(b)(2) requires the respondent to a motion for summary judgment to specifically controvert the facts in the moving party's statement. "All material facts contained in the moving party's statement which are not specifically controverted by the respondent in his statement shall be deemed to have been admitted." LR–220–5(b)(2) (N.D.Ga.). The Court concludes that defendants have not "specifically controverted" the amount due on ABI's indebtedness when they stated that the amount was "disputed."

Accordingly, the Court finds that defendants are jointly and severally liable for the balance of the loans to ABI. On April 30, 1994, the balance was $1,449,395.[8] Interest on the indebtedness is accruing pursuant to the "Special Provisions Rider." (Compl. at Ex. A, at ¶ 3.) Thus far, Congress has been charging interest at the ordinary contract rates set forth in the Special Provisions Rider. (Second Aff. of McCarthy [24], at ¶ 2.) The Court further finds that defendants are liable for this interest as well as the balance of the loans to ABI.

Defendants Commercial and Superior's Motion for Summary Judgment is denied for two reasons. First, as this Court is granting Plaintiff's Motion for Summary Judgment on the merits, the Court cannot grant summary judgment for the defendants. Additionally, defendants' motion is untimely. The Local Rules of this Court require filing of motions for summary judgment not later than twenty (20) days after the close of discovery. *See* LR 220–5(c) (N.D.Ga.). Discovery expired on May 5, 1994. Defendants filed their motion on June 17, 1994, more than twenty days later. Thus, the motion is untimely.

### CONCLUSION

Accordingly, Plaintiff's Motion for Summary Judgment [18] is **GRANTED.** Defendants' Commercial Technology, Inc. and Superior Technology, Inc. Motion for Summary Judgment [19] is **DENIED.**

Defendants' Commercial Technology, Inc. and Superior Technology, Inc. are hereby ordered to pay plaintiff Congress Financial Corporation (Southern), the outstanding balance of the loans plus interest.

SO ORDERED.

---

8. Defendants state that plaintiff has not offset payments it has received from the outstanding balance. In a second affidavit, McCarthy, Senior Vice President for Congress, states that the $1,449,395 amount of indebtedness of April 30, 1994 "included all payments of any funds received by Congress from ABI or any other party in connection with the loans made Congress to ABI or the disposition of any collateral securing these loans." (Second Aff. of McCarthy [24].) The record before the Court indicates that two checks were issued by Trans Metals to Congress in the amounts of $5,419.76 and $2,802.20 on April 19, 1993 and April 22, 1993, respectively. The Court presumes that Congress has already offset these amounts since they were presumably received before April 30, 1994. In the unlikely chance that Congress has not already offset these amounts, then the Court orders Congress to offset the outstanding balance of the indebtedness by these amounts.