## A94A2623. ALLSTATE INSURANCE COMPANY v. GRAYES et al.
### (454 SE2d 616)

BIRDSONG, Presiding Judge.

This interlocutory appeal was granted to review the trial court's denial of Allstate Insurance Company's motion for summary judgment in Allstate's action seeking a judicial declaration of its obligations under a homeowner's insurance policy it issued to Ulysses Middleton and Valencia Middleton. This litigation arises from a continuing dispute between the Middletons and their neighbors, Willie Grayes and Dolores Grayes, that ended when Ulysses Middleton shot both Willie and Dolores Grayes with a shotgun. Mrs. Middleton was not present at the time of the shooting. The Grayeses filed suit against the Middletons alleging that Mr. Middleton was liable because he intentionally and without provocation shot the Grayeses and that Mrs. Middleton was liable because she provoked the series of incidents that ultimately led to the shootings.

After the Grayeses sued the Middletons and the Middletons claimed coverage under their Allstate homeowner's policy, Allstate filed a petition seeking a declaratory judgment. Subsequently, Allstate moved for summary judgment contending there was no coverage because the policy covered only damages for bodily injury arising from accidents and because the policy's exclusions for intentional acts and criminal conduct precluded coverage under the policy. Allstate asserted that there was no coverage for Mr. Middleton because the Grayeses' injuries were caused by Mr. Middleton's intentional, criminal conduct and there was no coverage for Mrs. Middleton because her actions did not cause bodily injury to the Grayeses.

The Grayeses' response to the motion asserted that a policy endorsement modified the policy's criminal acts exclusion so that the exclusion did not apply if the bodily injury resulted from wilful acts or omissions committed by an insured or with the knowledge or consent of an insured, which were crimes under the Georgia Criminal Code, but the acts or omissions were for the preservation of life or property. Consequently, the Grayeses amended their complaint to allege that Mr. Middleton negligently shot the Grayeses in self-defense because he shot them without ascertaining whether he was really in danger. The Grayeses also submitted Mr. Middleton's affidavit stating that he shot the Grayeses in self-defense.

Because of the amendment to the endorsement, Allstate withdrew its reliance on both policy exclusions. As to Mr. Middleton, All-

state based its motion for summary judgment solely on its contention that there was no coverage because the shootings were not accidental and the policy covered only damages arising from accidents.

The trial court denied Allstate's motion because it found that "the question is whether [Mr. Middleton] acted accidentally, negligently, recklessly, intentionally, etc. in an effort to preserve life or property. Because coverage depends on a factual finding that Mr. Middleton's conduct fit within the endorsement providing coverage for protection of life or property, the issue cannot be determined as a matter of law." Thus, the trial court found jury issues existed on whether Mr. Middleton's conduct satisfied the preservation of life or property exception to the criminal acts exclusion. As to Mrs. Middleton, the trial court found there were issues of fact concerning coverage for her because she was intimately involved in the incidents that ultimately resulted in the Grayeses' injuries.

Allstate contends the trial court erred because the criminal acts or omissions exception applied only if there was bodily injury caused by Mr. Middleton that arose from an accident, and here the evidence showed there was no accident. Allstate also contends that the trial court erred by denying its motion regarding coverage for Mrs. Middleton because there was no evidence that her actions resulted in bodily injury to the Grayeses. *Held*:

1. Although the questions the lower court found significant might ultimately become relevant in certain cases, a court's first obligation in cases such as this is to construe the insurance policy to determine the scope of the policy and any exclusion at issue. OCGA § 13-2-1. If any question of fact is then relevant, the jury must decide those issues. Id.

Further, before addressing whether the terms of some exclusion might be applicable, the initial consideration is whether the policy covered the incident in which the Grayeses suffered their injuries. *Penn. Millers Mut. Ins. Co. v. Heule*, 140 Ga. App. 851, 852 (232 SE2d 267); *Showers v. Allstate Ins. Co.*, 136 Ga. App. 792 (222 SE2d 198); *Ga. Farm Bureau Mut. Ins. Co. v. Alloway*, 134 Ga. App. 660, 661 (215 SE2d 506). To establish a prima facie case on a claim under a policy of insurance the insured must show the occurrence was within the risk insured against. See *Donaldson v. Pilot Life Ins. Co.*, 177 Ga. App. 748, 749 (341 SE2d 279); *Fidelity &c. Co. of Md. v. Sun Life Ins. Co.*, 174 Ga. App. 258, 260 (329 SE2d 517).

The provision establishing the coverage of this policy states: "Losses we cover: Subject to the terms, limitations and conditions of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an accident and covered by this part of the policy." The policy defines "bodily injury" as "physical harm to the

body, including sickness and disease, and resulting death." Although the policy does not define the term "accident," in Georgia an accident is defined as "an event which takes place without one's foresight or expectation or design." OCGA § 1-3-3 (2). "An accident refers to an unexpected happening rather than one occurring through intention or design. Acts could not be unexpected unless they were accidental." (Citation and punctuation omitted.) *Southern Guaranty Ins. Co. v. Saxon*, 190 Ga. App. 652, 653 (379 SE2d 577). The policy's exclusion of coverage for bodily injury resulting from an act or omission intended or expected to cause bodily injury (Section II, Losses we do not cover: No. 1 (a)) is consistent with these definitions. Consequently, the first consideration must be whether the bodily injuries the Grayeses sustained were the result of an accident.

The evidence concerning the incident from which the Grayeses' injuries arose is not in dispute. After a series of increasingly hostile incidents between the Middletons and Grayeses, Mr. Middleton shot Mr. Grayes. Then, when Mr. Middleton saw Mrs. Grayes standing on her porch with a shotgun, he also shot her. Although Mr. Middleton states that he only shot the Grayeses in self-defense because he thought they were going to shoot him, there is no dispute but that he shot both Grayeses intentionally; Middleton intended to shoot the gun and hit those whom he intended to shoot. See *Stein v. Mass. Bay Ins. Co.*, 172 Ga. App. 811, 812 (324 SE2d 510). Under the circumstances, the shootings were not events which took place without Mr. Middleton's foresight or expectation or design. See OCGA § 1-3-3 (2). Consequently, the injuries suffered by the Grayeses were not the result of accidents, and hence were not losses that would be paid under the policy.

Since the shootings were not covered by the policy in the first instance, whether the preservation of life or property exception to the wilful exclusion in the endorsement to the policy has no legal significance. See *Winters v. Reliance Standard Life Ins. Co.*, 209 Ga. App. 369, 370 (433 SE2d 363): "The policy language at issue, insuring against losses resulting from 'bodily injury *caused by accident*,' insures against unforeseen injuries caused by 'accidental means.'" As the bodily injuries suffered by the Grayeses did not arise from an accident, there was no coverage under the policy. Therefore, the trial court erred by denying Allstate's motion for summary judgment.

2. The trial court also erred by denying Allstate's motion concerning Mrs. Middleton. Since it is manifest that no act of Mrs. Middleton caused any bodily injury to the Grayeses, the policy of insurance provides no coverage for this incident. Further, the affidavit submitted by the Grayeses by Mr. Middleton which states that he shot the Grayeses in self-defense negates any possibility that Mrs. Middleton had anything to do with this incident.

3. Although the Grayeses contend that the exception to the criminal acts exclusion somehow extends coverage to the Grayeses' injuries or creates an ambiguity that must be resolved in their favor, we find no support for that contention. Nothing in the revised exclusion indicates that the exception, which would allow coverage for bodily injuries arising from certain criminal acts, was intended to extend coverage to injuries that resulted from intentional acts. In this regard, a similar exception was not added to the policy's intentional acts exclusion, and, as a consequence, bodily injury resulting from intentional acts would be excluded from coverage regardless of whether the act was a crime under the Georgia criminal code and regardless of whether the intentional act was for the preservation of life or property. See *Stein v. Mass. Bay Ins. Co.*, supra at 813-814. Consequently, the scope of this exception is to allow coverage for unexpected or unintended bodily injury or property damage resulting from wilful acts or omissions that are crimes under the Georgia criminal code, but were for the preservation of life or property. Since the bodily injuries suffered by the Grayeses were not unintended or unexpected, the exception to the criminal acts exclusion is of no assistance to their case.

Moreover, we find no ambiguity between the exception to the criminal acts exclusion and the intentional acts exclusion or the provision that defines the coverage of the policy. An ambiguity is " 'duplicity, indistinctness, an uncertainty of meaning or expression' " (*Tarbutton v. Duggan*, 45 Ga. App. 31 (5) (163 SE 298)), and a word or phrase is ambiguous when " ' "it is of uncertain meaning and may be fairly understood in more ways than one." ' " *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 256 (381 SE2d 322). As the words in this policy are plain and obvious, however, they must be given their literal meaning (*United States Fire Ins. Co. v. Capital Ford Truck Sales*, 257 Ga. 77, 79 (355 SE2d 428)), and, after considering the policy's language, it is obvious that there is no ambiguity even when all the provisions are considered together.

Although ambiguous policy provisions must be construed liberally in favor of the insured and strictly construed against the insurer, this cannot be done when the policy is clear and unequivocal. *United Svcs. Auto. Assn. v. Lail*, 192 Ga. App. 487, 489 (385 SE2d 424). "When the language of an insurance policy defining the extent of the insurer's liability is unambiguous and capable of but one reasonable construction, the courts must expound the contract as made by the parties. [Cit.] Courts have no more right by strained construction to make an insurance policy more beneficial by extending the coverage contracted for than they would have to increase the amount of coverage." *Burnette v. Ga. Life &c. Ins. Co.*, 190 Ga. App. 485 (379 SE2d 188).

Therefore, the judgment is reversed and the case remanded with

direction for the trial court to enter judgment for Allstate.

*Judgment reversed with direction. Blackburn and Ruffin, JJ., concur.*

DECIDED FEBRUARY 27, 1995 —

*Karsman, Brooks & Callaway, R. Kran Riddle,* for appellant.
*Clarence L. Martin, Jackson & Schiavone, G. Terry Jackson,* for appellees.