## A01A0805. BITUMINOUS CASUALTY CORPORATION
## v. NORTHERN INSURANCE COMPANY OF NEW YORK.
(548 SE2d 495)

MIKELL, Judge.

This is an appeal from a summary judgment granted to Northern Insurance Company of New York ("Northern") in a contribution action filed by Bituminous Casualty Corporation ("Bituminous") to recover half of the attorney fees and litigation expenses Bituminous has incurred and continues to incur in defending Triad Construction Company ("Triad") against claims filed by Hilda and Devan Lowe.[1] Because the claims asserted by the Lowes are excluded from coverage under Northern's policy, we affirm.

The Lowes hired Triad in 1995 as the general contractor for the construction of a 15,000-square-foot residence in Gadsden, Alabama. In the summer of 1996, a slate deck attached to the master bedroom and extending on columns over the front entrance to the home began to leak. Triad agreed to remove and reinstall the deck. On July 31, the plastic sheeting Triad had used to cover the deck blew away during a rainstorm, and water inundated the house, allegedly causing $165,000 in damages. At the time, Triad had commercial general liability insurance policies with both Bituminous and Northern.[2]

Disputes arose concerning the quality of the construction, and the Lowes terminated their contract with Triad on January 17, 1997, before the house was completed. In March, Triad received a subrogation demand from its builder's risk insurer, Great American Insurance Companies, for damages paid to the Lowes on account of the loss. The demand was submitted to Northern, which denied coverage.

In June 1997, Triad sued Devan Lowe in Georgia to recover monies allegedly due under the contract. Mr. Lowe, an Alabama resident, removed the suit to federal district court and filed a counterclaim, seeking damages for breach of contract and fraud, including attorney fees and punitive damages. Triad forwarded a copy of the counterclaim to Bituminous and Northern and requested that each insurer provide a defense. Bituminous and Triad entered into a bilateral reservation of rights and nonwaiver agreement, and Bituminous defended the counterclaim. However, by letter dated December 8, 1997, Northern denied coverage.

The Georgia action was dismissed for lack of personal jurisdiction, and on November 18, 1997, the Lowes filed suit against Triad in

---

[1] Triad has filed an amicus brief. While we laud its scholarly efforts, we find it unnecessary to address arguments it asserts that are unrelated to the "business risk" exclusion.

[2] Bituminous issued policy no. CLP 2277777, effective December 1, 1996, through December 1, 1997. Northern issued general liability policy no. EPA 24478530, effective on January 1, 1996, and cancelled on November 30, 1996, and umbrella policy no. UBA 69559467, effective January 1, 1996, through January 1, 1997.

the Circuit Court of Etowah County, Alabama. The suit asserted a negligence claim in addition to the breach of contract and fraud counts specified in the Georgia action. Bituminous has defended Triad in the Alabama suit, which remains pending. Triad did not notify Northern of the Alabama litigation.

Bituminous filed this contribution action against Northern on August 4, 1999. The parties filed cross-motions for summary judgment. The trial court denied Bituminous' motion and granted Northern's motion, ruling that the damages that occurred to the Lowes' house fell within the "business risk" exclusion from coverage under the policy. We agree.

> Whether an insurer is obligated to defend an action against its insured is determined by the contract; and since the contract obligates the insurer to defend claims asserting liability under the policy[,] even if groundless, the allegations of the complaint are looked to to determine whether a liability covered by the policy *is asserted*. Thus, the issue is not whether the insured is *actually liable* to the plaintiffs [in the underlying action]; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend.

(Citations and punctuation omitted; emphasis in original.) *Penn-America Ins. Co. v. Disabled American Veterans*, 224 Ga. App. 557, 558 (481 SE2d 850) (1997).

In their complaint in the Alabama litigation, the Lowes allege that Triad negligently allowed the unfinished residence to sustain substantial damage as a result of the removal of roof decks immediately prior to an impending, predicted storm. Triad had agreed to remove and reinstall the decks because they had been constructed with insufficient waterproofing. The issue is whether this claim falls within the coverage of Triad's policy with Northern.

Northern's umbrella policy provides coverage for property damage caused by an "occurrence," which is defined as "an accident." The policy does not define "accident," but OCGA § 1-3-3 (2) describes it as "an event which takes place without one's foresight or expectation or design." The policy contains a corresponding exclusion for property damage that is "expected or intended from the standpoint of the insured." Additionally, provisions 2.j.(5) and (6) exclude the following from coverage:

> "Property damage" to (5) [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing

operations, if the property damage arises out of those operations; or (6) [t]hat particular part of any property that must be restored or replaced because "your work" was incorrectly performed on it.

In *Sapp v. State Farm Fire &c. Co.*, 226 Ga. App. 200 (486 SE2d 71) (1997), this Court determined that an identical provision contained in a State Farm commercial general liability ("CGL") policy excluded coverage for damage to the construction project itself caused by the defective workmanship of the insured contractor. Id. at 202-203 (a). We explained that

the business risk borne by the contractor to replace or repair defective work to make the building project conform to the agreed contractual requirements . . . is not covered. . . . The coverage applicable under the CGL policy is for tort liability for injury to persons and damage to other property, and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

(Citations, punctuation and emphasis omitted.) Id. at 203-204 (b).

In the underlying litigation in *Sapp*, the homeowner alleged that the contractor installed wood flooring throughout the house without adequately addressing the moisture problem under the house. The floor began to warp soon after it was installed, and the homeowner sued to recover the cost of removing and replacing the flooring, as well as the costs of restoring his home to its pre-contract condition. Id. at 201. The facts of the case sub judice do not differ materially from those in *Sapp*. Here, the homeowners allege that during the process of removing and reinstalling decks that were built with insufficient waterproofing, the builder negligently failed to take sufficient precautions to protect the project from being inundated by water due to a predicted storm. *Sapp* is apposite and controlling.

Bituminous attempts to distinguish *Sapp* by arguing that the Lowes' complaint could reasonably be construed as alleging that Triad's negligence caused damage to "other property," that is, parts of the project other than those on which Triad worked. Bituminous relies on *Canal Indem. Co. v. Blackshear Farmers Tobacco Warehouse*, 227 Ga. App. 637 (490 SE2d 129) (1997), and *Glens Falls Ins. Co. v. Donmac Golf Shaping Co.*, 203 Ga. App. 508 (417 SE2d 197) (1992), in support of its argument, but neither case is apposite. *Canal Indem. Co.* involved a roofer who installed and repaired a portion of the roof of a tobacco warehouse. The roof leaked after the work was completed, and water damaged tobacco that was stored inside the

warehouse. We held that the ruined tobacco constituted "other property" that was covered by the roofer's CGL policy. The case is distinguishable because the insured roofer was responsible for only a portion of the roof, while in the instant case, the insured was the general contractor and thus responsible for the entire construction project.

In *Glens Falls Ins. Co.*, the developer of a golf course alleged that the contractor negligently built part of the project on federally protected wetlands. Coverage under the contractor's CGL policy was premised upon its alleged failure to exercise ordinary care not to endanger the persons or property of others. Id. at 512.

As the Lowes have asserted a claim that is excluded from coverage under the policy, Northern has no duty to defend it. The trial court did not err in granting summary judgment to Northern.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MAY 8, 2001 

*Bovis, Kyle & Burch, John H. Peavy, Jr.,* for appellant.

*Hawkins & Parnell, Frank C. Bedinger III, Christian G. Henry,* for appellee.

*Freeman, Mathis & Gary, T. Bart Gary,* amicus curiae.