**OWNERS INSURANCE COMPANY,**
**Plaintiff,**

v.

**Lucinda J. JAMES; Stephen P. Litras; Harry Johnson Builders, Inc.; Harry Johnson; and Precision Plastering, Inc., Defendants.**

**No. CIV.A. 1:03–CV–0016–CAP.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 7, 2003.

1356

Michael C. Kendall, Maureen Elizabeth Murphy, Conoscienti, Storm & Kendall, Decatur, GA, for plaintiff.

Charles Fermery Peebles, Office of Charles F. Peebles, Norcross, GA, for defendants.

## ORDER

PANNELL, District Judge.

This matter is now before the court on defendants James and Litras' motion to dismiss [Doc. No. 14–1]; the plaintiff's motions for default judgment against Harry Johnson, Inc. [Doc. No. 20–1], Precision Plastering, Inc. [Doc. No. 21–1], and Harry Johnson [Doc. No. 22–1]; and the plaintiff's motion for summary judgment [Doc. No. 23–1].

For the reasons set forth below, defendants James and Litras' motion to dismiss is DENIED, the plaintiff's motions for default judgment are GRANTED, and the plaintiff's motion for summary judgment is GRANTED.

### Factual Background

The plaintiff, Owners Insurance Company ("Owners Insurance"), filed this action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57. Essentially, Owners Insurance seeks a determination from this court that it has no duty to defend or indemnify Precision Plastering, Inc. ("Precision") for the claims asserted against it by Harry Johnson Builders, Inc. ("HJB") and its president, Harry Johnson, in a lawsuit pending in the Superior Court of Gwinnett County ("the underlying suit").

In May of 1996, Lucinda J. James and Stephen P. Litras ("the homeowners") purchased a newly-constructed residence located at 625 Dartington Way, Alpharetta, Georgia. The homeowners allege that subsequent to closing on the purchase of the residence, they discovered that it was improperly constructed with synthetic stucco cladding, commonly known as an Exterior Insulation and Finish System ("EIFS"). They further allege that water has penetrated behind the EIFS and caused other property damage, including deterioration of windows, breaking down of gypsum sheathing, wood rot, and elevated moisture within the wall cavities.

On June 21, 2002, the homeowners filed the underlying suit against their builders, HJB and Mr. Johnson ("the builders"). In that action, the homeowners seek recovery for, inter alia, damage caused by the improper and defective application of the EIFS under the theories of negligence and fraud. In response, the builders filed a third-party complaint against several parties, including Precision, which provided all of the labor and material for application of the EIFS to the residence. The builders seek indemnification, contribution, and other relief from Precision under the theories of breach of contract, breach of warranty, and negligence.

Owners Insurance issued successive commercial general liability ("CGL") insurance policies to Precision, policy numbers 03326654 and 934618–48326654, with collective policy periods from May 3, 1993 through May 3, 1996.[1] However, the final

---

1. The court is puzzled by the homeowner's argument, in their opposition to the plaintiff's motion for summary judgment, that the insurance policies are inadmissible hearsay and thus should not be considered by the court. The law attaches independent significance to the statements involved in making a contract;

policy was canceled as of 12:01 a.m. on June 1, 1995. Upon receiving notice of the claims against Precision in the underlying suit, Owners Insurance issued a letter to Precision reserving its rights to contest coverage under the insurance policies.

## Legal Analysis

### I. Defendants James and Litras' motion to dismiss

The court first considers the motion to dismiss filed by defendants James and Litras. In this motion, the homeowners argue that the instant action is due to be dismissed because of (1) lack of subject matter jurisdiction and (2) failure to properly serve Mr. Litras.

### A. Subject matter jurisdiction

 The plaintiff contends that subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1332, the diversity jurisdiction statute. Under that statute, a district court has jurisdiction over any civil action where (1) the parties are "citizens of different States" and (2) "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332(a). When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 807 (11th Cir.2003). A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith. *Id.*

 In this instance, the homeowners maintain that the court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000. Dismissal of a case brought under 28 U.S.C. § 1332 is proper where the pleadings

make it clear to a legal certainty that the claim is really for less than the jurisdictional amount. *Leonard v. Enterprise Rent a Car,* 279 F.3d 967, 972 (11th Cir. 2002). *See also St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.") (footnotes omitted).

 Generally speaking, the judicially established legal-certainty test makes it very difficult for a defendant to secure a dismissal of a case on the ground that it does not appear to satisfy the statutory jurisdictional amount requirement. *See* 14B Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* 3d § 3702 (1998). Only three situations clearly meet the legal-certainty standard for purposes of defeating the court's subject matter jurisdiction: (1)

thus, such statements do not constitute hearsay. *See, e.g., United States v. Mena,* 863 F.2d

1522, 1531 (11th Cir.1989).

when the terms of a contract limit the plaintiff's possible recovery; (2) when a specific rule of substantive law or measure of damages limits the amount of money recoverable by the plaintiff; and (3) when independent facts show that the amount of damages was claimed by the plaintiff merely to obtain federal court jurisdiction. *Id. See also Federated Mut.,* 329 F.3d at 808 (holding that (1) the insurance policy underlying the action did not satisfy the jurisdictional amount standing by itself because it provided only $50,000 in coverage and (2) the insurer's potential liability for bad faith damages did not bring the action within the court's jurisdiction because the damages sought under the bad faith claim were indeterminate and the claimant represented that it did not seek and, more importantly, would not accept damages in excess of $74,000); *Boyd v. Homes of Legend, Inc.,* 188 F.3d 1294, 1299–1300 (11th Cir.1999) (holding that the district court erred when it took punitive damages into account in determining whether the claims satisfied the amount-in-controversy requirement because punitive damages were not recoverable on the plaintiff's claims).

◼ In this case, the limits of the plaintiff's insurance policy with Precision extend to $1 million; thus, the plaintiff could potentially face liability exceeding $75,000. *Compare Federated Mut.,* 329 F.3d at 808. In fact, the homeowners' complaint in the underlying suit seeks "general damages in an amount in excess of $40,000" on each of their two counts, thereby allowing for a recovery of more than $75,000.[2] Moreover, the amount in controversy in this action must take into account not only the recovery sought in the underlying suit, but also (1) the attorneys' fees sought by the homeowners in that action, *see Federated Mut.,* 329 F.3d at 808 n. 4, and (2) the plaintiff's obligation to defend its insured in that action, *see Stonewall Ins. Co. v. Lopez,* 544 F.2d 198, 199 (5th Cir.1976).[3]

Therefore, the court cannot conclude that the amount in controversy in this case fails to meet the jurisdictional amount to a legal certainty. Thus, dismissal is not warranted on the basis of lack of subject matter jurisdiction.

## B. Service of process as to defendant Litras

◼ In the motion to dismiss, defendant Litras also complains that the plaintiff failed to perfect service of process on him in accordance with Federal Rule of Civil Procedure 4. According to Mr. Litras, the plaintiff attempted to serve him through Ms. James at her residence. However, Mr. Litras maintains that he has not resided there since March of 2002 and that Ms. James was not authorized to accept service of process for him.

Mr. Litras attached an affidavit to the motion to dismiss in which he indicated his current address. The plaintiff served him at that address on March 17, 2003, which is

2. The homeowners' arguments that the potential recovery is limited because "Precision has never paid more than $50,000.00 in an action similar to the one at hand" and because the costs to repair the residence have been estimated at $51,600 are inapposite. Any evidence concerning Precision's involvement in other lawsuits bears no relevance to the amount in controversy in this particular case. Moreover, the amount in controversy is determined by the pleadings and cannot be decreased by subsequent events which reduce

the amount recoverable. *Red Cab Co.,* 303 U.S. at 289–90, 58 S.Ct. at 590–91. Thus, the relevant figure in this case is the amount actually sought by the plaintiffs in the underlying suit.

3. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

less than 70 days after the complaint was filed. Thus, the plaintiff complied with the requirements of Rule 4, providing that service must be accomplished within 120 days of the filing of a complaint.

Accordingly, defendants James and Litras' motion to dismiss is DENIED.

## II. The plaintiff's motions for default judgment

■ Next, the court considers the plaintiff's motions for default judgment against defendants HJB, Precision, and Mr. Johnson. The plaintiff filed the complaint in this action on January 6, 2003. Precision was served with the summons and complaint on January 10, 2003, and HJB and Mr. Johnson were served on January 23, 2003. All three of these defendants have failed to serve or file an answer or other responsive pleading, as required by Federal Rule of Civil Procedure 12(a)(1). Because these defendants have not appeared in this action by answering the complaint, filing defensive motions, or offering any response indicating an intent to defend, this court finds that default judgment is warranted.

Accordingly, the court DIRECTS the clerk to enter default as to defendants Harry Johnson Builders, Inc., Precision Plastering, Inc., and Harry Johnson. Additionally, the plaintiff's motions for default judgment against Harry Johnson Builders, Inc., Precision Plastering, Inc., and Harry Johnson are GRANTED.

## III. The plaintiff's motion for summary judgment

Finally, the court considers the plaintiff's motion for summary judgment. Because none of the other defendants has appeared to defend this action, the summary judgment motion is opposed only by the homeowners.

## A. The summary judgment standard

Rule 56(c) of the Federal Rules of Civil Procedure authorizes a court to enter summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute exists as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). This burden is discharged by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In determining whether the moving party has met its burden, a district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir.1996). Once the moving party has adequately supported its motion, the nonmovant has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact, but rather to determine whether there are any such issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The applicable substantive law will identify those facts that are material. *Id.* at 248, 106 S.Ct. at 2510. Facts that are disputed, but which do not

affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment. *Id.*

Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In order for factual issues to be "genuine" they must have a real basis in the record. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. When the record as a whole could not lead a rational trier of fact to find for the nonmovant, there is no "genuine issue for trial." *Id.* (citations omitted).

### B. Application of the standard in the instant case

The plaintiff contends that it has no duty to defend or indemnify Precision in the underlying suit, and thus that summary judgment is proper in this action, because (1) the insurance policies were not in effect at the time the homeowners allegedly sustained damage, (2) the policies do not provide coverage for the particular damage sought, and (3) the alleged damage is otherwise excluded under the "business risk" exclusions contained in the policies.

■■■ An insurer's duty to defend is determined by the insurance contract[4]; and since the contract obligates the insurer to defend claims asserting liability under the policy, even if groundless, the allegations of the complaint are looked to in order to determine whether a liability covered by the policy is asserted. *O'Dell v. St. Paul Fire & Marine Ins. Co.,* 223 Ga.App. 578, 579, 478 S.E.2d 418, 419 (1996). The critical issue is whether the suit alleges a claim that is covered by the policy. *Id.* Therefore, in the instant case, the court must compare the terms of the insurance contract to the allegations in the complaint in order to determine whether the underlying suit seeks damages for covered claims.

■■■ Because the court has jurisdiction in this case based on diversity of citizenship, the court must apply the substantive law of the forum state—in this instance, Georgia. *See Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996). Under Georgia law, contracts of insurance are interpreted by ordinary rules of contract construction. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.,* 269 Ga. 326, 327, 498 S.E.2d 492, 494 (1998). Three well-known rules apply. First, any ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed; and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible. *Id.* at 328–28, 498 S.E.2d at 494. Second, where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent. *Id.* Third, the contract is to be considered as a whole and each provision is to be given effect and interpreted so as to harmonize with the others. *Id.*

### 1. Whether the policies were in effect at the time the alleged damage was incurred

The plaintiff first contends that its insurance policies with Precision were not in effect at the time the homeowners allegedly sustained damage because the final poli-

---

**4.** An insurer's duty to defend an insured in litigation is broader than its duty to indemnify. *See City of Atlanta v. St. Paul Fire & Marine Ins. Co.,* 231 Ga.App. 206, 209, 498 S.E.2d 782, 785 (1998). Thus, in this case, the court cites and relies upon the standard governing the insurer's duty to defend.

cy was terminated several months before the homeowners purchased the residence.

The insurance policies provide that the plaintiff will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Commercial General Liability Coverage Form § I(A)(1)(a). The policies further indicate that "[t]his insurance applies to 'bodily injury' and 'property damage' only if ... [t]he 'bodily injury' or 'property damage' occurs during the policy period." *Id.* § I(A)(1)(b)(2). The collective policy period is from May 3, 1993 through May 3, 1996; however, the last insurance policy was canceled as of 12:01 a.m. on June 1, 1995.

■■■ The issue in this case, then, is whether the alleged damage to the residence arose during the applicable policy period, i.e., prior to June 1, 1995. Based on the plain language of the policies, the relevant question in determining coverage is *when the property damage occurred,* rather than when the event causing that damage occurred. *See also South Carolina Ins. Co. v. Coody,* 813 F.Supp. 1570, 1574 (M.D.Ga.1993) (interpreting contrasting contract language under Georgia law); *Continental Cas. Co. v. Synalloy Corp.,* 667 F.Supp. 1563, 1575 (S.D.Ga.1986), *aff'd,* 826 F.2d 1024 (11th Cir.1987) (interpreting similar contract language under Georgia law). Thus, the appropriate question in this case is not when the EIFS was applied, but rather when the homeowners allegedly sustained property damage caused by the application of the EIFS.

The plaintiff argues that any such property damage did not occur prior to June 1, 1995, because the homeowners did not enter into a contract for the construction and sale of the residence until March 10, 1996, and the certificate of occupancy for the residence was not issued until April 23, 1996. However, the homeowners contend

that, based on Precision's response to discovery requests in the underlying suit, the EIFS system was installed during March and April of 1995. Thus, they argue, "[a]n issue of fact remains as to whether damage arose during the policy periods."

■■■ The court notes, however, that the evidence presented by the homeowners to show that the EIFS system was installed in March or April of 1995 is not admissible and, therefore, cannot be considered by the court in ruling on the plaintiff's motion for summary judgment. *See Carr v. Tatangelo,* 338 F.3d 1259, 1273 n. 26 (11th Cir.2003) (holding that the district court properly refused to consider the proposed evidence, i.e., an unsworn preliminary report by an expert witness, in ruling on summary judgment motions). More specifically, the homeowners cite Precision's response to Mr. Johnson's First Interrogatories in the underlying suit; but this response was filed in a separate action and, more importantly, it is not verified. *See id.* ("Unsworn statements 'do not meet the requirements of Fed. Rule Civ. Proc. 56(e)' and cannot be considered by a district court in ruling on a summary judgment motion.") (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 1608–09 n. 17, 26 L.Ed.2d 142 (1970)).

Thus, there is no admissible evidence indicating that the alleged damage to the residence occurred prior to the cancellation of the final insurance policy on June 1, 1995. Moreover, even if the homeowners could establish that the EIFS system was installed during March and April of 1995, there is no evidence showing that any damage occurred in the one– to two-month window between that application and June 1, 1995. Accordingly, the court concludes that the plaintiff has no duty to defend or indemnify Precision in the underlying suit. Therefore, summary judgment is proper.

## 2. Whether the policies provide coverage for the damage sought

Moreover, even assuming that the insurance policies were in effect at the time any damage occurred to the residence, summary judgment is still proper in this case because the insurance policies do not provide coverage for the particular damage sought in the underlying suit.

The third-party claims against Precision in the underlying suit are based on allegations that Precision (1) failed to take proper precautions to ensure that water would not penetrate the residence at interfaces between the EIFS and other features, (2) failed to follow the instructions provided by the manufacturer, (3) selected an EIFS that was susceptible to water leakage and damage, (4) delivered an exterior cladding system that was inadequate to comply with the warranties and recommendations it made, (5) failed to review other aspects of the construction of the residence to ensure that they were compatible with the EIFS, and (6) failed to perform its contract in a workmanlike manner. However, claims based on these alleged acts are not covered by the policies.

The CGL policies issued to Precision provide that "[t]his insurance applies to 'bodily injury' and 'property damage' only if ... [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" Commercial General Liability Form § I(A)(1)(b)(1). The policies further define an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* § V(9).

Although "accident" is not defined in the policies, Georgia courts have construed that term to signify "an unintended happening rather than one occurring through intention or design." *See, e.g., Allstate Ins. Co. v. Grayes*, 216 Ga.App. 419, 421, 454 S.E.2d 616, 618 (1995); *Thrif–Mart, Inc. v. Commercial Union Assurance Cos.*, 154 Ga.App. 344, 346, 268 S.E.2d 397, 400 (1980). *See also* O.C.G.A. § 1–3–3(2) (" 'Accident' means an event which takes place without one's foresight or expectation or design."). "Accident" and "intention" are thus interpreted as converse terms. *Thrif–Mart*, 154 Ga.App. at 346, 268 S.E.2d at 399–400.

Applying that definition in similar cases, courts have generally held that where an act is intentional, it does not constitute an "accident" as that term is defined in an insurance policy. *See, e.g., Grayes*, 216 Ga.App. at 421, 454 S.E.2d at 618–19 (holding that injury caused by an intentional shooting was not the result of an accident and thus was not covered by the insurance policy at issue); *Georgia Farm Bureau Mut. Ins. Co. v. Meriwether*, 169 Ga.App. 363, 363, 312 S.E.2d 823, 824 (1983) (holding that injury caused by the intentional blocking of a roadway was not the result of an accident and thus was not covered by the insurance policy at issue, notwithstanding the fact that the party blocking the road may have believed it was a private road rather than a public one). *But see Glens Falls Ins. Co. v. Donmac Golf Shaping Co.*, 203 Ga.App. 508, 509, 417 S.E.2d 197, 199 (1992) (holding that injury caused by the construction of a golf course on federally-protected wetlands was the result of an accident and thus was covered by the insurance policy at issue because, while the developer intended to build the golf course in that location, it had no knowledge that the location involved wetlands and therefore lacked "the specific intent ... to cause the alleged damages").[5]

---

5. While the homeowners cite *Glens Falls* to support their argument, that case seems to be in conflict with the decision of the Georgia Court of Appeals in *Meriwether*, 169 Ga.App. at 363, 312 S.E.2d at 824. In an attempt to avoid such a conflict, the Eleventh Circuit distinguished these cases by noting that the court in *Glens Falls* was interpreting an *ex-*

Similarly, in the instant case, Precision's work at the residence was intended and thus does not constitute an "accident" under the insurance policies; therefore, any damage allegedly resulting from that work is not covered by the policies. The homeowners attempt, nonetheless, to make a distinction between unintentional *acts* and unintended *consequences* of one's actions by arguing that Precision's negligence in causing damage to other parts of the residence, i.e., damage to windows, wall cavities, and other areas besides the EIFS, qualifies as an accident.

■ It is true that Georgia law distinguishes between insurance coverage for accidental injuries and coverage for injuries caused by accidental means. *See Provident Life and Accident Ins. Co. v. Hallum,* 276 Ga. 147, 147, 576 S.E.2d 849, 851 (2003). An *accidental injury* is an injury that is unexpected but may arise from a conscious voluntary act. *Id.* In contrast, *an injury from accidental means* is one that is the unexpected result of an unforeseen or unexpected act that was involuntarily or unintentionally done. *Id.*

However, in cases concerning insurance policies with language similar to that at issue in this case, the policies have been construed to cover only injury *resulting from accidental acts* and not injury *accidentally caused by intentional acts. See, e.g., Grayes,* 216 Ga.App. at 421, 454 S.E.2d at 618–19 (holding that a policy covered only injury resulting from accidental acts where it provided that the insurer would "pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage

arising from an accident"); *Winters v. Reliance Standard Life Ins. Co.,* 209 Ga.App. 369, 370, 433 S.E.2d 363, 363–64 (1993) (holding that a policy covered only injury resulting from accidental acts where it indicated that insurance was provided against losses that "result . . . from bodily injury caused by accident"); *Meriwether,* 169 Ga.App. at 363, 312 S.E.2d at 823–24 (holding that a policy covered only injury resulting from accidental acts where it provided that the insurer "will pay . . . all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage . . . caused by an occurrence" and where an occurrence was defined as "an accident . . . which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured"). *Compare Hallum,* 276 Ga. at 148–49, 576 S.E.2d at 851 (holding that a policy extended to injury accidentally caused by intentional acts where it used the words "accidental bodily injuries").

■ Similarly, the insurance policies at issue in this case provide coverage for injury *resulting from accidental acts,* but not for an injury *accidentally caused by intentional acts.* As stated above, the policies provide that "[t]his insurance applies to 'bodily injury' and 'property damage' only if . . . [it] is caused by an 'occurrence' that takes place in the 'coverage territory,'" Commercial General Liability Form § I(A)(1)(b)(1), and that an occurrence is defined as "an accident . . . ," *id.* § V(9). Therefore, because the acts causing the alleged injury, i.e., Precision's installation

---

*clusion* to insurance coverage, whereas *Meriwether* considered the construction of terms *providing* coverage. *Mindis Metals, Inc. v. Transp. Ins. Co.,* 209 F.3d 1296, 1300 (11th Cir.2000). Thus, the circuit court held that, despite seemingly contradictory language in *Glens Falls,* "[a] fair reading of *Meriwether* leads to the inevitable conclusion that an 'ac-

cident' does not include damage to persons or property when that damage is intentionally inflicted, even where that intentional conduct is caused by erroneous information." *Id.* The issue in this case, as in *Meriwether,* is the proper construction of terms providing insurance coverage. Therefore, the rule of *Meriwether* applies.

of the EIFS, were intentional, the alleged injury is not covered by the policies.

Accordingly, the court concludes that the plaintiff has no duty to defend or indemnify Precision in the underlying suit and thus that summary judgment is proper in this case.[6]

Therefore, the plaintiff's motion for summary judgment is GRANTED.

### Conclusion

For the foregoing reasons, the court hereby:

(1) DENIES defendants James and Litras' motion to dismiss [Doc. No. 14–1];

(2) DIRECTS the clerk to enter default as to defendants Harry Johnson, Inc., Precision Plastering, Inc., and Harry Johnson;

(3) GRANTS the plaintiff's motions for default judgment against Harry Johnson, Inc. [Doc. No. 20–1], Precision Plastering, Inc. [Doc. No. 21–1], and Harry Johnson [Doc. No. 22–1]; and

(4) GRANTS the plaintiff's motion for summary judgment [Doc. No. 23–1].

The court's ruling on the above motions disposes of all issues pending in this case. Accordingly, the clerk may issue judgment in favor of the plaintiff and against the defendants.

Finally, the clerk is DIRECTED to enter a declaratory judgment in favor of the plaintiff that it is not obligated to defend or indemnify Precision Plastering, Inc. in the lawsuit styled *Lucinda J. James and Stephen P. Litras v. Harry Johnson Builders, Inc. and Harry Johnson*, Civil Action File Number 02–A–6492–5, filed in the Superior Court of Gwinnett County.

---

6. The plaintiff further argues that it has no duty to defend or indemnify Precision since the alleged damage is excluded by the "business risk" exclusions contained in the policies. However, because Precision was a subcontractor only responsible for *installation* of the EIFS, any damage it caused to other portions of the residence would most likely fall outside the scope of the "business risk" exclusions. *See, e.g., Bituminous Cas. Corp. v. Northern Ins. Co. of N.Y.,* 249 Ga.App. 532, 535, 548 S.E.2d 495, 498 (2001) (holding that damage to other parts of a residence, caused when plastic sheeting used to cover the deck blew away during a rainstorm, fell within the policy's "business risk" exclusions because the insured was the general contractor and thus was responsible for the entire construction project); *Canal Indem. Co. v. Blackshear Farmers Tobacco Warehouse, Inc.,* 227 Ga. App. 637, 639, 490 S.E.2d 129, 132 (1997) (holding that damaged sections of a roof constituted "other property," and thus did not fall within the policy's "business risk" exclusions, because the insured roofer was responsible for repairing only a portion of the roof). Nonetheless, the court need not decide this issue as summary judgment is proper on the other two grounds asserted by the plaintiff.