[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13063
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cv-00157-TCB


ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,

Plaintiff - Counter
Defendant - Appellee,

versus

KIM ROBERTS,

Defendant,

BOBBY J. ROBERTS,

Defendant - Counter
Claimant,

SINATRA MILLER,
ARLENE MILLER,

Defendants - Appellants.
_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 21, 2017)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

On January 12, 2013, Bobby Roberts ("Bobby"), who was married at the time to Kim Roberts ("Roberts"), shot Sinatra Miller ("Sinatra"), an invited guest of Roberts's, multiple times in the front yard of Roberts's home.  Sinatra, who survived, and Arlene Miller (collectively, the "Millers") then sued Roberts and Bobby in Georgia state court.

At the time of the shooting, Roberts was insured under a policy of homeowners' insurance issued by Allstate Property and Casualty Insurance Company ("Allstate").  The policy provided coverage for an "occurrence," which it defined as "an accident" causing bodily injury.  Allstate filed this declaratory-judgment action seeking a declaration that it owed no duty to defend its insured, Roberts, in the underlying lawsuit because the shooting was intentional and therefore not an "accident."  The district court agreed with Allstate and entered judgment in its favor.  The Millers appeal that determination.

The question we must resolve is whether Bobby's undisputedly intentional act nevertheless qualifies as an "accident" under Roberts's homeowners' insurance policy.  That question, in turn, depends on whether an "accident" is determined from the perspective of the actor or from the perspective of the insured.  Because under Georgia insurance law the question of whether an event is an "accident"

2

"must be asked from the viewpoint of the insured," *Rucker v. Columbia Nat'l Ins. Co.*, 705 S.E.2d 270, 273–74 (Ga. Ct. App. 2010), we vacate the judgment and remand for further proceedings.

## I.

The essential facts are undisputed. Roberts owned a single family home in Villa Rica, Georgia. On the evening of January 12, 2013, Sinatra was at Roberts's home as an invited guest when Bobby, then Roberts's husband (now ex-husband), entered the home and confronted Sinatra and Roberts. As Bobby walked into a bedroom, Sinatra exited the home through the front door. Bobby followed Sinatra into the front yard and shot him multiple times with a handgun.

The Millers filed suit against Roberts and Bobby, raising claims of aggravated assault, premises liability, and loss of consortium. At the time of the incident, Roberts was insured under a homeowners' insurance policy issued by Allstate (the "Policy"). The Policy provided coverage for an "occurrence," which it defined as "an accident." Reserving its rights under the Policy, Allstate retained counsel to defend Roberts in the underlying suit.

Allstate then filed this action for declaratory judgment, advancing two claims. First, Allstate alleged that Bobby's shooting was not a covered "occurrence" because it was intentional, not an "accident." Second, Allstate asserted that Bobby was an unnamed "insured person" under the Policy, which

excluded coverage for damages caused by the intentional or criminal acts of any insured person.  The district court agreed with Allstate on the first claim and did not reach the second.  The Millers now appeal.

## II.

We review *de novo* the district court's grant of summary judgment. *Liebman v. Metropolitan Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). Summary judgment is appropriate "where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *Id.*; Fed. R. Civ. P. 56(a).

This diversity-of-citizenship case is governed by Georgia state law. Insurance is a matter of contract under Georgia law, and "the parties to an insurance policy are bound by its plain and unambiguous terms."  *QBE Ins. Co. v. Couch Pipeline & Grading, Inc.*, 692 S.E.2d 795, 796–97 (Ga. Ct. App. 2010) (quoting another source).  Ambiguous provisions—those susceptible of two or more reasonable constructions—"will be construed against the insurer," but "if the language is unambiguous and but one reasonable construction is possible, the court will enforce the contract as written."  *Id.*

Roberts's Policy affords coverage for damages arising from an "occurrence."  Specifically, the Policy provides, in relevant part, that Allstate must "pay compensatory damages which an insured person becomes legally obligated to

4

pay because of bodily injury . . . arising from an occurrence to which this policy applies." Allstate also agreed to pay reasonable medical expenses incurred within three years from "an occurrence causing bodily injury." The Policy excludes coverage of damages caused by "intentional or criminal acts or omissions of any insured person."

An "occurrence" is defined by the Policy as "an accident . . . resulting in bodily injury or property damage." The term "accident" is undefined. But, under Georgia insurance law, the term "accident" means "an event which takes place without one's foresight or expectation or design." *Allstate Ins. Co. v. Grayes*, 454 S.E.2d 616, 618 (1995) (citing O.C.G.A. § 1-3-3(2)).

The parties agree on the general definition of an "accident," but they dispute whose "foresight or expectation or design" matters. The Millers contend that the question of whether an event is an "accident" must be viewed from the perspective of the insured.[1] They assert that because the shooting was not foreseeable to Roberts, the insured, it was an "accident" for purpose of the Policy. Allstate maintains that the policy language does not limit "accident" to the perspective of the insured and that, because Bobby's shooting was intentional, it cannot be considered an "accident."

---

[1] Although Allstate contended that Bobby qualified as an "insured" under the Policy, the district court did not reach that question. We therefore assume for purposes of this opinion that Bobby is not an insured under the Policy.

Neither party identifies controlling authority on this specific question, but we find that the Millers' position is the correct one under Georgia insurance law. In *Rucker*, the Georgia Court of Appeals stated that, under a policy of insurance, "[t]he question of whether an event took place without one's foresight, expectation or design ***must be asked from the viewpoint of the insured***." *Rucker*, 705 S.E.2d at 273–74 (emphasis added). The *Rucker* court derived that statement of law from two cases in which the Georgia Court of Appeals held that an intentional act was an "accident" for purposes of an insurance policy because it was not foreseeable to the insured. *Cincinnati Ins. Co. v. Magnolia Estates, Inc.*, 648 S.E.2d 498 (Ga. Ct. App. 2007); *Crook v. Ga. Farm Bureau Mutual Ins. Co.*, 428 S.E.2d 802 (Ga. Ct. App. 1993).

In *Crook*, the insured was sued by the parents of a child who died on the insured's property. 428 S.E.2d at 802–03. The insured had a homeowners' policy which, like the Policy at issue here, defined "occurrence" as "an accident," but did not otherwise define the term "accident." *Id.* at 803. The insurer took the position that the son's death was not an "accident" because the son voluntarily committed the acts which resulted in his own death. *Id.* Rejecting the insurer's position, the Georgia Court of Appeals concluded that the question of whether an event constitutes an "accident" must be asked from the viewpoint of the insured: "[I]nsofar as Crook, in his capacity as an insured, is concerned, the death of the

6

[son] was clearly an 'accident,' because it was an unintentional event which took place without his 'foresight or expectation or design.'" *Id.* Accordingly, the court found that the insurer was required to defend the underlying action. *Id.*

Then, in *Cincinnati*, the Georgia Court of Appeals applied and reaffirmed the holding of *Crook.* In the *Cincinatti* case, the insured, Magnolia Estates, Inc., a personal care home, was sued by an 80-year-old resident of the home after she was attacked by another resident. 648 S.E.2d at 499–50. Magnolia Estates's insurance policy, like the Policy at issue here, defined "occurrence" as "an accident," but did not otherwise define the term "accident." *Id.* at 500. Again, the insurer took the position that the attack was not an "accident" because it was intentional. *Id.*

Relying on *Crook*, the Georgia Court of Appeals found that the relevant question was whether the event at issue "occurred without the ***insured's*** foresight or expectation or design." *Id.* (emphasis added) (internal quotation marks omitted). Because "the attack against [the plaintiff] by a fellow patient occurred without Magnolia Estates's foresight, expectation, or design," the court reasoned, the attack was "properly characterized as accidental for purposes of coverage." *Id.* Moreover, the court explained, that interpretation was consistent with the policy's other provisions, specifically the exclusion for intentional or criminal acts "of the insured." *Id.* "If, as Cincinnati contends, no intentional act can ever constitute an accident for purposes of coverage, then this exclusion is rendered meaningless."

*Id.* Accordingly, the court concluded that the underlying claim fell within the policy's coverage.

*Cincinnati* and *Crook* thus stand for the proposition that, at least in the circumstances presented in this case, "[t]he question of whether an event took place without one's foresight, expectation or design must be asked from the viewpoint of the insured." *Rucker*, 705 S.E.2d at 273–74. These cases also contradict Allstate's contention that the specific language of the Policy at issue distinguishes this case from others where Georgia courts have found that the question of whether an event constitutes an "accident" is determined based on the viewpoint of the insured. *Cf. Georgia Farm Bureau Mutual Ins. Co. v. Meriwether*, 312 S.E.2d 823, 824 (Ga. Ct. App. 1983) (policy expressly defined "occurrence" as "an accident . . . from the standpoint of the insured"). Both *Cincinnati* and *Crook* involved policies that, like the Policy here, defined an "occurrence" simply as an "accident." *See Cincinnati*, 648 S.E.2d at 500; *Crook*, 428 S.E.2d at 803. So the lack of specific "language restricting the definition of an 'occurrence' to the standpoint of the insured," Allstate's Br. at 13, provides no reason to reach a different result from *Cincinnati* and *Crook* in this case.

The other Georgia state cases on which Allstate relies likewise do not require a different result. *See Allstate Ins. Co. v. Neal*, 696 S.E.2d 103 (Ga. Ct. App. 2010); *Grayes*, 454 S.E.2d at 618. *Neal* and *Grayes* are consistent with our

8

holding here because the events at issue in those cases were the intentional acts of the insured, so the events took place with the insured's foresight or expectation or design. *See Neal*, 696 S.E.2d at 105 (insured's intentional shooting of police officer); *Grayes*, 454 S.E.2d at 618 (insured's intentional shooting of neighbor). Allstate's reliance on *Neal* is particularly misplaced because *Neal* in fact supports the Millers' position. *See Neal*, 696 S.E.2d at 106 ("[C]ases concerning whether an event is an accident under a homeowner's liability policy ***have turned on whether the event was unforeseen by the insured***.") (emphasis added).

In sum, the district court erred because it did not ask "[t]he question of whether an event took place without one's foresight, expectation or design . . . from the viewpoint of the insured." *Rucker*, 705 S.E.2d at 273–74. We vacate the judgment in favor of Allstate and remand for application of the correct legal standard. We take no position on any issue that the district court did not reach, including whether the intentional-criminal-acts exclusion applied because Bobby, as Allstate alleged, was an "insured person" under the Policy.

**VACATED AND REMANDED.**